[Cite as *State v. Guysinger*, 2017-Ohio-1167.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 15CA3514 |
| vs. | : | |
| DEREK R. GUYSINGER, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James P. Tyack, The Tyack Law Firm Co., L.P.A., Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-28-17
PER CURIAM.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. A jury found Derek Guysinger, defendant below and appellant herein, guilty of three counts of rape and five counts of gross sexual imposition. The trial court (1) sentenced appellant to serve an aggregate prison term of thirty-five years to life; and (2) classified appellant as a Tier III sex offender. Appellant raises the following assignment of error for review:

> "THE PERFORMANCE OF TRIAL COUNSEL WAS DEFICIENT
> AND DEPRIVED APPELLANT OF THE RIGHT TO EFFECTIVE
> ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH
> AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

CONSTITUTION AND SECTION 10 ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 2} On January 23, 2015, the Ross County Grand Jury returned an indictment that charged appellant with (1) three counts of rape of a child less than 13 years old, and (2) five counts of gross sexual imposition of a child less than 13 years old. Appellant pled not guilty to the charges.

{¶ 3} Subsequently, appellant filed a detailed motion to suppress the expected testimony of the prosecution's witness, Laura Butt, an employee of the Ross County Child Protection Center, in its case-in-chief. Although the state had requested a subpoena for Butt to testify at trial, after the filing of the motion to suppress, the state withdrew her name as a witness.

{¶ 4} Additionally, the trial court granted appellant's request for a continuance based upon the representation that the defense needed additional time to obtain an investigator to interview potential witnesses and to determine if the witnesses were material to the defense. Appellant also requested and received a bill of particulars of the charged offenses.

## I. FACTS

{¶ 5} At the jury trial, the state presented two witnesses - the alleged victim of the crimes (A.G., Guysinger's biological daughter) and Dr. Satish Jetty, a pediatrician who examined A.G. A.G., who was 13 years old at the time of the trial, testified that after her parents separated, she lived with her father, the appellant. In the summer of 2012, when A.G. was 10 years old and before she began the fifth grade, A.G. moved to a residence on Egypt Pike where appellant shared a bedroom with his girlfriend, Tina. A.G. shared a bedroom with one of Tina's daughters, and Tina's other daughter had her own bedroom. The remaining rooms in the residence were the bathroom, living room, kitchen, and laundry room.

{¶ 6}   A.G. testified that on one afternoon in 2012 after she came home from school, she stayed at a friend's house until appellant told her to come home.   When she arrived home, appellant told her to sit on his lap in the living room.   No one else was at home.   After A.G. sat on appellant's lap, he inserted his hand inside her underwear and rubbed her vagina for five or six minutes.   Appellant stopped because his girlfriend, Tina, was coming home from work. Appellant then told A.G. to shower.

{¶ 7}   That same night, in her bedroom while the other girl was asleep, appellant removed A.G.'s underwear and touched her vagina.   A.G. then started to move until appellant left the room.

{¶ 8}   The next afternoon, after A.G. came home, appellant went into A.G.'s room, removed her pants and inserted his penis into her vagina for about five minutes, hurting her. Appellant stopped when A.G.'s friend and his brother came to ask A.G. to come outside and play. Appellant again told A.G. to shower.

{¶ 9}   A couple of days later, while appellant was driving A.G. to a friend's house near the flood wall, appellant again rubbed A.G.'s vagina through the outside of her sweatpants for two or three minutes, then warned her not to tell anyone or he'd get in trouble.   When they arrived at the friend's home, appellant went inside while A.G. stayed in the car and wrapped herself in a blanket.  On the return trip to their house, appellant removed A.G.'s blanket, inserted his hand inside her underwear and rubbed her vagina.

{¶ 10} A few days later, while A.G., Tina, and Tina's two children watched the television program "Glee," A.G. walked to the kitchen during a commercial break.   At that time, Tina remained in the living room, one daughter in the bathroom, and her other daughter in her bedroom.

Appellant went to the kitchen, pulled down A.G.'s pants and underwear, then touched her buttocks with his penis for a couple seconds before he stopped and pulled up their pants.

{¶ 11} During another evening, while A.G. washed dinner dishes and one of Tina's daughters was in her room and Tina and her other daughter were not at home, appellant stood behind A.G., pulled down her pants and inserted his penis inside her vagina for one to two minutes. Once again, appellant then told A.G. to shower.

{¶ 12} A few weeks later, A.G. was told to move her belongings into the laundry room, which was to be her new bedroom. Appellant came up behind A.G. when no one else was home, rubbed his penis against her buttocks and vagina, then inserted his penis inside her vagina for a couple seconds. Appellant again told A.G. to shower.

{¶ 13} At trial, A.G. testified that she did not say anything to appellant during these episodes because she was too scared. However, a couple of days after the final incident A.G. called her mother and asked if she could live with her. A.G. then moved out of appellant's home before Christmas. According to A.G., she told no one about her father's conduct because she was scared. Two years later, near the end of 2014, A.G. told her seventh-grade social studies teacher about her father's actions in 2012. At that time, A.G.'s mother and family took her to the child protection center to be examined.

{¶ 14} After the state's direct examination of A.G., one of appellant's two trial counsel engaged in the following, abbreviated cross-examination:

Q: GOOD MORNING, MAY I CALL YOU [A.G. ]?

A. YES.

Q:  THANK YOU.  I JUST HAVE A COUPLE QUESTIONS FOR YA.  AT THE EGYPT PIKE HOUSE, IF YOU WERE IN THE KITCHEN, WAS THAT SURROUNDED BY OTHER ROOMS?
A:  NO.

Q:  WERE THERE ANY OTHER ROOMS THAT YOU COULD SEE INTO THE KITCHEN FROM?
A:  NO.

Q:  OKAY.  AND, UM, YOU HAD SAID WHEN MR. MARKS ASKED YOU, THAT YOU MOVED INTO THE LAUNDRY ROOM AS YOUR BEDROOM; DID YOU CHOOSE TO MOVE INTO THE LAUNDRY ROOM?

A:  NO, NOT REALLY.

Q:  YOU WOULD HAVE RATHER STAYED IN THE BEDROOM WITH [TINA'S DAUGHTER]?
A:  YEAH.

Q:  OKAY.  UM, DURING THE TIME THAT THE TWO YEARS FROM TWO THOUSAND TWELVE TO TWO THOUSAND FOURTEEN, HAD YOU EVER GOT- DID YOU GO TO THE DOCTOR AT ALL?  NOT RELATED TO THIS, BUT FOR ANY SORT OF – YOU KNOW, IF YOU GOT THE FLU, OR –

A:  UM, NO, NOT THAT I CAN REMEMBER.

{¶ 15} With the exception of asking the court for a minute to reflect, this exchange is the victim's entire cross-examination.  The state opted not to conduct any redirect examination.

{¶ 16} The state's other witness, Dr. Jetty, testified that he worked at the child protection center and evaluated sexually abused children.  The parties stipulated that Dr. Jetty is an expert witness in the field of pediatric medicine.  Dr. Jetty testified that in November 2014, he conducted a physical examination of A.G. and observed that she exhibited a healing scar inside her vagina.  Dr. Jetty opined that the scar did not represent a recent injury, and that it could have occurred months or even a year or two before her examination.  Dr. Jetty further opined that A.G.'s vaginal scar had been caused by blunt object penetration, and could have been a penis.

{¶ 17} On cross-examination by one of appellant's trial counsel, Dr. Jetty described his normal protocol with a patient and conceded that he could not give an opinion concerning the age of A.G.'s injury with any type of certainty. Dr. Jetty thus agreed with counsel that A.G.'s injury could have occurred any time beyond one or two weeks before the examination. During the cross-examination the following exchange occurred:

> Q: OKAY. UM, NOW THAT SCAR, IS THERE, IN YOUR MEDICAL TRAINED OPINION, IN ANY WAY THAT THAT COULD HAVE BEEN INFLICTED UPON THE CHILD WITHOUT ANY SEXUAL CONDUCT?
>
> A: UM, NO, SIR.
>
> Q: COULD A TYPE – ANY TYPE OF TRAUMATIC ACCIDENT GIVE THAT TYPE OF INJURY?
>
> A: IT HAS TO BE – IT HAS TO BE – LIKE A CHILD HAS TO FALL ON A SHARP OBJECT WHERE IT HAS TO PENETRATE INTO THE VAGINA.

The state also opted not to conduct any redirect examination of Dr. Jetty. After the state rested its case, and after the trial court overruled appellant's Crim.R. 29 motion for judgment of acquittal, the defense rested without introducing any evidence.

{¶ 18} In its closing argument, the state summarized the evidence and requested that the jury return a verdict of guilty on all charges. When given the opportunity to present closing argument on appellant's behalf, one of appellant's attorneys made the following argument:

> LADIES AND GENTLEMEN OF THE JURY, AS WE ASKED YOU AT THE OUTSET OF THIS TRIAL, WE'RE ASKING YOU TO REVIEW THE EVIDENCE AND IF YOU FIND THAT THE STATE DID NOT PROVE EACH AND EVERY ELEMENT OF THE OFFENSES THAT DEREK'S CHARGED WITH, WE ASK THAT YOU COME BACK WITH A NOT GUILTY VERDICT. THANK YOU.

The state did not present any rebuttal closing argument.

{¶ 19} After receiving the court's instructions and considering the evidence adduced at trial, the jury found appellant guilty of all charges. The trial court (1) sentenced appellant to serve an aggregate prison sentence of 35 years to life, and (2) classified appellant as a Tier III sex offender.

## II. ASSIGNMENT OF ERROR

{¶ 20} In his sole assignment of error, appellant asserts that he received ineffective assistance of trial counsel as guaranteed by both the United States Constitution and the Ohio Constitution.

{¶ 21} "The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012); *see also* Article I, Section 10 of the Ohio Constitution. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 23. Because this issue cannot be raised at trial, an appellate court must conduct the initial, de novo review. *See State v. Plymale*, 4th Dist. Gallia No. 15CA1, 2016-Ohio-3340, ¶ 34. In Ohio, the defendant has the burden of proof because a properly licensed attorney is presumed to be competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679,

860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). In reviewing the claim of ineffective assistance of counsel, courts must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland at 689.

## A. *CRONIC* EXCEPTION GENERAL INEFFECTIVE ASSISTANCE TEST

{¶ 22} In the case at bar, in support of his claims that he received ineffective assistance of counsel, appellant initially asserts that his attorneys' performance should be presumed prejudicial because they entirely failed to subject the prosecution's case to meaningful adversarial testing.

{¶ 23} In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court "recognized that some circumstances are so likely to prejudice the defendant that no showing of prejudice is necessary." *See State v. Sanders*, 92 Ohio St.3d 245, 277, 750 N.E.2d 90 (2001). These circumstances include the complete denial of counsel at a critical stage of the trial, the complete failure of counsel to subject the prosecution's case to meaningful adversarial testing, counsel's active representation of conflicting interests, and where defense counsel was appointed only a few minutes before trial commenced. *Sanders* at 277, citing *Cronic* at 659-661.

{¶ 24} "'Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.' " Sanders at 277, quoting *Cronic* at 659. In *Bell v. Cone*, 535 U.S. 685, at 696-697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), the United

States Supreme Court emphasized that a defendant claiming that the *Cronic* exception for

counsel's failure to subject the prosecution's case to meaningful adversarial testing should apply

must establish that the failure is complete:

> "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing."

(Emphasis sic.)

{¶ 25} In the case sub judice, we do not believe that appellant has established that his trial

counsel completely failed to test the prosecution's case. Thus, the narrow *Cronic* exception to the

general ineffective-assistance test set forth in *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed.2d 674, is inapplicable. In the case at bar, appellant's trial counsel (1) engaged in discovery,

(2) requested and received a continuance to allow for an investigator to interview potential

witnesses, (3) filed a suppression motion that resulted in the exclusion of one of the state's

potential witnesses, (4) were present and participated at trial, (5) cross-examined the state's

witnesses, and (6) provided an opening statement and a closing argument. Consequently, the case

at bar is not the extremely rare situation in which a defendant's trial counsel completely failed to

test the prosecution's case. *See State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247,

2014-Ohio-2181, fn. 12 (similarly rejecting a defendant's claim that the court should apply *Cronic*

and presume prejudice).

### 3. INEFFECTIVE ASSISTANCE UNDER *STRICKLAND* STANDARD

{¶ 26} Because appellant did not establish under *Cronic* that prejudice should be

presumed, we must now review his ineffective-assistance claim under the *Strickland* standard.

*See, e.g., State v. Barfield*, 4th Dist. Ross No. 13CA3387, 2015-Ohio-891, ¶ 15 ("In *Cronic*, the

Supreme Court noted that the *Strickland* standard applies when appellant asserts specific errors made by counsel"). Appellant raises specific errors concerning his trial attorneys' cross-examination of the two state witnesses and the very abbreviated closing argument.

{¶ 27} We first consider appellant's claim that even if prejudice is not presumed, his trial counsels' limited cross-examination of the victim (his 13-year-old daughter A.G.), and counsels' ineffective cross-examination of the state's expert witness constituted deficient performance that prejudiced him. Generally, "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 146. Moreover, "'[a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.'" *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks*, 10th Dist. Franklin No. 04AP164, 2004-Ohio-3887, ¶ 40; *see also State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 23.

{¶ 28} In the case at bar, we recognize that only one prosecution witness (A.G.) claimed to have personal knowledge of the criminal offenses. Also, no contemporaneous physical evidence exists to support A.G.'s testimony. Our review of the record reveals that on cross-examination, appellant's trial counsel asked five tangential, substantive questions: (1) two questions asked whether other rooms had a view of the kitchen, (2) two questions asked whether A.G. wanted to move her bedroom to the laundry room, and (3) the final substantive question asked whether A.G. had gone to the doctor for unrelated medical conditions. Counsel, however, did not meaningfully or forcefully challenge A.G.'s recollection of the details of the crimes, did not raise issues

concerning any possible motivation she may have had to fabricate her testimony, and did not contest her reason for delaying her reporting of the crimes for approximately two years.

{¶ 29} After our review, however, we do not believe that the record supports the argument that the cross-examination of A.G. falls outside the realm of trial strategy, or that the cross-examination prejudiced appellant. In light of the very sensitive nature of this case, which involves a child victim of sexual assault, counsels' decision not to extensively cross-examine A.G. does not, by itself, constitute ineffective assistance of trial counsel. *See, e.g., State v. Hughes*, 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶ 60 (trial counsel's failure to cross-examine any of the state's witnesses, including the child victim, in a case involving rape and gross sexual imposition, did not constitute ineffective assistance, reasoning that "[t]rial counsel's decision not to cross-examine N.P. and F.H., both minors, is a reasonable and understandable trial tactic given the sensitive nature of this case"); *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 20-23 (trial counsel's decision not to cross-examine child victims in case involving rape and gross sexual imposition was within the realm of sound trial strategy and did not constitute ineffective assistance of counsel). Various reasons exist to support the tactical decision to conduct a very brief cross-examination of the child-victim. Trial counsel could have been wary about a contentious cross-examination of A.G., who had testified emotionally on direct examination. A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury. Also, trial counsels' limited cross-examination of A.G. did elicit a possible reason for A.G. to be angry at appellant—she was forced, against her wishes, to move her bedroom into the laundry room. Moreover, it is not at all clear that additional questioning of A.G. would have necessarily resulted in favorable testimony concerning the details of the offenses and her reason for not

reporting the crimes earlier than she did.  A.G. testified on direct examination that she did not report the crimes because she was scared.  Additional cross-examination on these matters may have simply bolstered the state's case.  *See State v. Freeman*, 8th Dist. Cuyahoga No. 92809, 2010-Ohio-3714, ¶ 51 (decision not to cross-examine child victims of rape and gross sexual imposition about why they failed to come forward with their allegations sooner did not constitute ineffective assistance when they explained this on direct examination because "[i]t would have been foolish for defense counsel to re-elicit this damning testimony and explanations from the children on cross-examination").

{¶ 30} We also point out that appellant's trial counsel did extensively cross-examine Dr. Jetty, the state's expert witness.  This cross-examination elicited favorable testimony that Dr. Jetty could not, with any certainty, identify an age or the source of A.G.'s vaginal scar, thus intimating that the scar could have resulted from some conduct that occurred when she lived with her mother.  The cross-examination also elicited unfavorable testimony that, in Dr. Jetty's opinion, the scar could not have been inflicted without any sexual conduct, but this statement was tempered by Dr. Jetty's response to the follow-up question that the scar could have been caused by a traumatic accident, and the fact that it might have occurred at any time beyond two weeks prior to the examination, i.e. it happened not while she lived with her father, but while she lived with her mother.  Once again, counsels' decision to engage in this line of questioning falls within the permissible scope of trial strategy.  *See Allah*, 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, at ¶ 23.

{¶ 31} Appellant asserts, without record support, that a more thorough cross-examination of the child victim and the doctor could have possibly elicited favorable testimony to challenge the

victim's timeline, the details of the crimes, to disclose a potential motive on the part of the victim or her mother for claiming that appellant sexually abused her, and emphasized that the victim's two-year delay in reporting the crimes. We readily acknowledge trial counsel should ask questions to discern potential inconsistencies or inaccuracies with a witness' memory or perception. As we noted previously, however, trial counsel could have justifiably determined that additional cross-examination of the child victim on these matters might have alienated the jury and actually bolstered the state's case. Also, by engaging in a more limited cross-examination of the child victim, appellant's trial counsel were able to prevent the state from engaging in a redirect examination. Counsels' investigation could have revealed the risk that pursuit of these areas could produce more damaging evidence than the state had introduced. In short, it appears that appellant's ineffective assistance claim is premised on speculation, which is insufficient to establish his claim. *Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, at ¶ 119 (mere speculation cannot support either the deficient-performance or prejudice requirements of an ineffective-assistance claim); *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 37 (defendant cannot base claim of ineffective assistance of counsel on speculation that evidence outside the record would establish prejudice).

{¶ 32} Therefore, after our review of the record, we believe that appellant did not establish that his trial counsel provided ineffective assistance by failing to cross-examine the state's witnesses more extensively. Thus, appellant failed to satisfy either prong of the *Strickland* test.

{¶ 33} Appellant next argues that trial counsel's very brief closing argument, in which one attorney simply requested that the jury review the evidence and return a not-guilty verdict if it

found that the state had not proven each element of the charged offenses, constitutes ineffective assistance of counsel.

{¶ 34} During closing argument, counsel simply requested that the jury review the evidence and, *if* it found that the state had not proven each and every element of the charged offenses, return a not-guilty verdict. Generally, "[c]ounsel's decision on whether to give an opening statement or closing argument and how to formulate and deliver them are tactical decisions." See *State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶69, citing *State v. Bradley*, 42 Ohio St.3d 136, 144, 538 N.E.2d 373 (1989) (rejecting defendant's ineffective assistance of counsel claim that his counsel's closing argument was "too brief, passionless and themless"). Normally "[t]he substance of closing argument falls within the realm of trial strategy." *State v. Cameron*, 10th Dist. Franklin No. 09AP-56, 2009-Ohio-6479. ¶31. Here, we agree with appellant that the closing argument presented in the case sub judice is questionable. Even though appellant faced severe consequences, counsel's closing argument did not attempt to challenge the evidence in any manner, did not point to potential inconsistencies or potential conflicts and did not argue the lack of corroborative evidence. Nevertheless, numerous case authorities hold that even if defense counsel opts to waive closing argument entirely, that decision will not automatically constitute a finding of ineffective assistance. For example, in *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995), the Ohio Supreme Court concluded that in some circumstances, the waiver of closing argument could be viewed as a matter of trial strategy. In *Burke*, the prosecution made a brief, cursory closing argument. The court concluded that counsel's waiver of closing argument was not improper in that particular situation because (1) the prosecution's closing argument was

very brief and counsel may have opted not to highlight various aspects of the evidence; and (2) the waiver precluded the prosecution from making a rebuttal argument.

{¶ 35} Here, we do not believe that the record supports the view that a more detailed closing argument would have resulted in a different outcome. Our review of all of the evidence adduced at trial will not permit us to arrive at the conclusion that a different, more detailed or lengthy closing argument would have somehow changed the jury's view of the matter and changed the result of the trial.

{¶ 36} At first glance, although we recognize that trial counsel may not have performed as one would have expected in a criminal case, the record does not support the view that a more detailed closing argument would have resulted in a different outcome at trial. Admittedly, appellant raises issues and areas of concern. However, we may only speculate about why counsel performed in this particular manner and whether any prejudice may have actually resulted. In view of the presumption that we must apply concerning sound trial strategy, we are left to only speculate whether prejudice resulted. In other words, we cannot state that a reasonable probability exists that but for counsels' performance, the result would have been different. Here, the evidence adduced at trial clearly supports the jury's verdict. Additionally, we point out that if any pertinent and relevant evidence favorable to the appellant exists and is available outside this record, appellant may choose to pursue a post-conviction relief remedy.

{¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment of conviction and sentence.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee to recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment & Opinion
Hoover, J.: Dissents

For the Court

BY:_____
Peter B. Abele, Judge

BY:_____
Matthew W. McFarland, Judge

BY:_____
Marie Hoover, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.