[Cite as *State v. Makin*, 2017-Ohio-7882.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104545**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HAKEEN MAKIN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600229-A

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 28, 2017

**ATTORNEY FOR APPELLANT**

Richard Agopian
600 Superior Avenue, East - Suite 2505
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Marc Bullard
Jennifer King
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Hakeen Makin ("Makin"), appeals from his convictions and sentence for failure to comply and felonious assault of a peace officer. For the reasons set forth below, we affirm.

**{¶2}** In October 2015, Makin was charged in an eight-count indictment. Count 1 and Counts 3-8 charged him with felonious assault, and each carried a furthermore clause stating that the victim is a peace officer. Count 2 charged him with failure to comply.

**{¶3}** Prior to trial, Makin requested that his appointed counsel be removed. In February 2016, the trial court conducted a hearing on Makin's request. The court acknowledged Makin's complaints and, at the conclusion of the hearing, denied Makin's motion for new counsel. The court struck Makin's motion to disqualify counsel and did not permit hybrid representation. The court also set a hearing date for February 16, 2016, if Makin wished to request pro se representation. The record reveals that no hearing was ever held.

**{¶4}** The matter then proceeded to a jury trial, at which the following pertinent evidence was adduced.

**{¶5}** In May 2016, the Fugitive Task Force set up surveillance on the 1700 block of Noble Road in East Cleveland in order to execute an arrest warrant for Makin. Lakewood Police Detective Neil Thibodeaux ("Detective Thibodeaux") along with Lakewood Detective Jeffrey Roda and Lakewood K-9 Officer Chris Obrock were waiting for Makin in an unmarked car parked in a driveway of an abandoned home on Noble

Road.  Detective Thibodeaux testified that they waited for approximately three hours before they observed Makin enter a car parked approximately four houses south of their location.

{¶6}  Once Makin entered his car, other vehicles from the Fugitive Task Force surrounded Makin's car, attempting to block Makin's avenues of escape.  Lakewood Detective Patrick Cantlin and Euclid Detective John Braun each used their respective cars to block Makin, with lights and sirens activated.  In response to being blocked in by the officers, Makin drove onto the tree lawn.  Detective Thibodeaux attempted to block Makin from escaping by driving his car onto the tree lawn.  But as Detective Thibodeaux approached, Makin accelerated, which caused Makin's car to collide with Detective Thibodeaux's car.  This collision caused the two vehicles to spin out of control and for Makin's car to momentarily stall.

{¶7}  While Makin's car was stalled, the Task Force Officers exited their cars to arrest Makin.  As they approached Makin, they yelled, "Police.  Show me your hands." Makin responded by restarting his car and fleeing from the scene.  Makin proceeded northbound on Noble Road, where he hit an unoccupied, parked SUV and a car driven by Deputy U.S. Marshal Christopher Snack ("Deputy U.S. Marshal Snack"), who attempted to block Makin's escape.  Makin nearly collided head-on with Deputy U.S. Marshal Snack's car, which also contained two other Deputy U.S. Marshals.  Following the collision, Makin drove through two yards and a hedge of bushes before continuing on Noble Road.

**{¶8}** Makin was then pursued by multiple vehicles. Cleveland Police Officer Jerrod Durichko ("Officer Durichko") responded to the chase in a marked car with his sirens activated. Makin violated several traffic laws during the pursuit. The car chase ended when Makin's car became stuck on a pile of rocks by Interstate 90. Makin exited his car and began to run on foot onto Interstate 90. Officer Durichko and his partner pursued Makin on foot as he ran across Interstate 90 to the exit ramp on the other side of the freeway and back onto the highway. The officers eventually apprehended Makin near the median of Interstate 90.

**{¶9}** After the completion of trial, the jury found Makin guilty of failure to comply, as charged in Count 2, and three counts of felonious assault of a peace officer, as charged in Counts 3, 4, and 5. The jury found him not guilty of the remaining felonious assaults of a peace officer counts (Counts 1, 6, 7, and 8).

**{¶10}** The trial court sentenced Makin to three years in prison on Count 2 and five years on each of Counts 3-5, to be run concurrently to each other, but consecutively to Count 2 for an aggregate of eight years in prison. The court also ordered Makin to pay court costs.

**{¶11}** Makin now appeals, raising the following six assignment of errors for review.

<u>Assignment of Error One</u>

The trial court committed error and denied [Makin] his rights under the Constitutions of the United States and Ohio when it wrongfully denied him his right to self-representation.

## Assignment of Error Two

The trial court abused its discretion to the prejudice of the [Makin] when it failed to grant a continuance to secure the appearance of a witness.

## Assignment of Error Three

The evidence was insufficient to convict [Makin] of felonious assault, R.C. 2903.11, and failure to comply with a lawful order/signal of a police officer, R.C. 2921.331.

## Assignment of Error Four

[Makin's] convictions were against the manifest of the weight of the evidence.

## Assignment of Error Five

[Makin] was denied the effective assistance of counsel and was not afforded his constitutional right to counsel pursuant to the Sixth Amendment, due process, and a fair trial pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.

## Assignment of Error Six

The trial court erred by imposing court costs without complying with R.C. 2947.23(A).

## Right to Self-Representation

{¶12} In the first assignment of error, Makin contends the trial court erred when it denied him of his right to self-representation.

{¶13} We note that a defendant in a criminal trial possesses an independent constitutional right of self-representation and may be allowed to defend himself or herself without counsel when he or she voluntarily, knowingly, and intelligently elects self-representation. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d

227, at paragraph one of the syllabus.

{¶14} Here, Makin requested that his appointed counsel be removed. The trial court conducted a hearing on Makin's request. A review of the hearing reveals that the court gave ample consideration to Makin's indications of his intent to self-represent. The trial court stated that it would give him a copy to read of the colloquy it must go through to determine if Makin could be his own attorney. The court stated:

> I'm not trying to talk you out of it. It's none of my business. There are some things that some people who want to represent themselves, that it sounds so good and glorious and maybe they saw a movie of where somebody represented themselves and did real well, et cetera, but there are some pitfalls. It might be good for you to read this colloquy so you'll know exactly the kind of questions the Court is going to be asking you and it gives you some time to think about it.

{¶15} The court then set the matter for a hearing contingent upon Makin's indication to the court that he wished to proceed pro se. This matter, however, was not raised again by Makin, and he proceeded to trial with appointed counsel.

{¶16} The foregoing record does not support Makin's assertion that the trial court denied him of his right to self-representation. Rather, it indicates that the trial court advised Makin of his options and set the matter for a hearing that was then never pursued.

{¶17} Accordingly, the first assignment of error is overruled.

<u>Motion for Continuance — Securing Witness</u>

{¶18} In the second assignment of error, Makin argues the trial court abused its discretion when it denied defense counsel's request for a continuance in order to secure the appearance of Melvin Robertson ("Robertson") — a witness for the defense.

**{¶19}** The decision to grant or deny a motion for continuance is left to the broad and sound discretion of the trial judge, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Cuyahoga Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). "'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶20}** In the instant case, defense counsel asked for a continuance, after the state rested its case, so two witnesses — Robertson and Jeff White ("White") — could be brought into court to testify for Makin. Defense counsel noted that he had subpoenas issued for both individuals the day before, but his efforts to contact them have been unsuccessful. Robertson was the individual Makin was meeting with on Noble Road. White is an expert on auto mechanics repair and damage. With respect to Robertson, defense counsel stated:

> I will say from the nature of the testimony, I don't know that Mr. Robertson being here or not for that purpose caused him any significant damage, because both from the State's side and from my client, there seems to be testimony that my client was meeting with a person in a parking lot.

**{¶21}** We recognize "[i]t is incumbent upon a party moving for a continuance to secure the attendance of witnesses to demonstrate that substantial favorable testimony will be forthcoming and that the witnesses are willing and available as well." *In the*

*Matter of: Timothy Reynolds*, 8th Dist. Cuyahoga No. 46585, 1983 Ohio App. LEXIS 12312 (Nov. 3, 1983), citing *U.S. v. Boyd*, 620 F.2d 129 (6th Cir.1980); *U.S. v. Medina-Arellano*, 569 F.2d 349 (5th Cir.1978).

**{¶22}** Here, defense counsel stated that Robertson's absence did not cause Makin any prejudice because both Makin and the state essentially agreed that Makin was meeting someone in a parking lot. This testimony would have been more cumulative than substantially favorable to Makin. Because Makin has not proffered any favorable testimony of a substantial nature that would have been elicited from Robertson, we cannot say the trial court abused its discretion in denying his motion for a continuance.

Sufficiency of the Evidence

**{¶23}** In the third assignment of error, Makin challenges his failure to comply and felonious assault on a peace officer convictions.

**{¶24}** In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, the Ohio Supreme Court explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶25} We are mindful that in considering the sufficiency of evidence a certain perspective is required. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). "This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, quoting *Atkins v. State*, 115 Ohio St. 542, 546, 155 N.E. 189 (1926). It is the minds of the trier of fact, rather than a reviewing court, that must be convinced. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

{¶26} In the instant case, Makin was convicted of felonious assault of a peace officer, in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." He was also convicted of failure to comply, in violation of R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶27} A review of the record in the instant case reveals that the Task Force Officers surrounded Makin's car on Noble Road. The vehicles had active lights and sirens signaling police presence. Makin attempted to flee from the officers by driving onto the tree lawn and colliding with Detective Thibodeaux's car. Makin's car was then temporarily disabled. Officers approached on foot ordering Makin to stop and identifying themselves as police. Despite this, Makin restarted his car and collided

nearly head-on with Deputy U.S. Marshal Snack's car, which also contained two other Deputy U.S. Marshals.

{¶28} Makin was then pursued by multiple vehicles. During the pursuit, Makin violated numerous traffic laws. The car chase ended when Makin's car became stuck on a pile of rocks by Interstate 90. Makin exited his car and began to run on foot onto the Interstate. Officers eventually apprehended Makin near the median of the highway.

{¶29} When viewing this evidence in a light most favorable to the state, we cannot say there is insufficient evidence to support the felonious assault and failure to comply convictions. Makin knowingly attempted to cause physical harm by means of a deadly weapon when he drove his car head-on into the car containing Deputy U.S. Marshal Snack and his two colleagues. Additionally, despite the officers' orders to stop, Makin led the officers in a pursuit with multiple collisions and traffic violations.

{¶30} Accordingly, the third assignment of error is overruled.

Manifest Weight of the Evidence

{¶31} In the fourth assignment of error, Makin argues that his convictions are against the manifest weight of the evidence.

{¶32} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 390, 1997-Ohio-52, 678 N.E.2d 541. The Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

[T]he reviewing court asks whose evidence is more persuasive — the state's or the defendants? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶33} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶34} We note that when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *see also State v. Lilliard*, 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93 (In considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is "'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77,

80, 461 N.E.2d 1273 (1984)). Therefore, we afford great deference to the factfinder's determination of witness credibility. *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 36.

{¶35} Makin argues the jury "lost its way" because no witness was able to testify with any "certainty that Makin actually used his vehicle as a deadly weapon and was only trying to escape capture."

{¶36} Makin was found guilty based on the evidence of several officers who testified that they were assigned the task of arresting Makin because he was a wanted fugitive. When the officers, who were either dressed in uniform or plain clothes with a vest stating "police" instructed him to stop, Makin attempted to flee. In the process, he collided into two cars driven by officers.

{¶37} Based on the foregoing, it cannot be said the jury "lost its way" in finding Makin guilty of felonious assault of a peace officer and failure to comply. This is not the rare case where the trier of fact clearly lost its way and created a manifest miscarriage of justice.

{¶38} Thus, the fourth assignment of error is overruled.

Ineffective Assistance of Counsel

{¶39} In the fifth assignment of error, Makin claims he was denied the effective assistance of counsel in the failure to subpoena a witness in a timely manner and failure to provide an expert report.

**{¶40}** In order to establish ineffective assistance of counsel, Makin must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation, and (2) that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

**{¶41}** In evaluating a claim of ineffective assistance of counsel, there is a strong presumption that counsel's conduct in question fell within a wide range of reasonable professional assistance. *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 67; *Strickland*. As a result, trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980), citing *People v. Miller*, 7 Cal.3d 562, 498 P.2d 1089 (1972); *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371.

**{¶42}** Makin claims counsel was ineffective for failing to timely subpoena witnesses and provide an expert report. He claims he was prejudiced by the cumulative effect of these errors.

**{¶43}** A review of the record reveals that defense counsel's alleged failure to timely subpoena Robertson and White was attributable to Makin. Defense counsel indicated that he issued the subpoenas "as quickly as [he] could." As discussed above, Robertson's testimony was not in dispute. Therefore, the absence of his testimony was

not prejudicial to Makin.   Furthermore, defense counsel was not ineffective for failing to provide an expert report by White because trial counsel acted on the information when Makin provided it to him.   Defense counsel stated, "I was not aware of my client's desire to call this witness at the first pretrial."

{¶44} Based on the foregoing, we cannot say that Makin received ineffective assistance of counsel.   Additionally, it is worth noting that defense counsel's effort resulted in a "not guilty" verdict on four of the seven felonious assault on a peace officer charges.

{¶45} Thus, the fifth assignment of error is overruled.

### Court Costs and R.C. 2947.23(A)

{¶46} In the sixth assignment of error, Makin argues the trial court erred in imposing court costs when it did not advise him, as required by R.C. 2947.23(A), that he has an opportunity to seek a waiver; and the failure to pay court costs could result in imposition of community service.   In support of his argument, Makin relies on *State v. Williams*, 9th Dist. Summit No. C.A. 26014, 2012-Ohio-5873.

{¶47} R.C. 2947.23 has been amended since the *Williams* decision.   The legislature amended R.C. 2947.23 in September 2014.   R.C. 2947.23(A) now provides:

> (1) (a) In all criminal cases, * * * the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs.   If the judge or magistrate imposes a community control sanction or other nonresidential sanction, the judge or magistrate, when imposing the sanction, shall notify the defendant of both of the following:

(i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(ii) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

(b) The failure of a judge or magistrate to notify the defendant pursuant to division (A)(1)(a) of this section does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment described in that division or to timely make payments toward that judgment under an approved payment plan.

**{¶48}** Under the language of the current statute, the required notice to the defendant regarding community service is limited to cases only where the court imposes a community control type sanction. This language was not included in the prior version of R.C. 2947.23(A).

**{¶49}** In the instant case, the trial court sentenced Makin to prison. As a result, the trial court was not required to give Makin the notice required under R.C. 2947.23(A) regarding community control and court costs.

**{¶50}** Accordingly, the sixth assignment of error is overruled.

**{¶51}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR