[Cite as *State v. Townsend*, 2019-Ohio-1134.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

    v. :

No. 107186

ALBERT TOWNSEND :

    Defendant-Appellant. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART AND REMANDED
**RELEASED AND JOURNALIZED:** March 28, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-614508-A

---

### *Appearances:*

P. Andrew Baker, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney; Melissa Riley
and Marcus A. Henry, Assistant Prosecuting Attorneys,
*for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant Albert Townsend ("Townsend") appeals his

convictions for rape, kidnapping, complicity to commit rape, attempted rape, and

gross sexual imposition. For the reasons that follow, we affirm in part, reverse in part, and remand.

## Procedural History and Facts

{¶ 2} Townsend was charged in connection with three separate sexual assaults. The first incident occurred on or about January 20, 2003; the second incident occurred between January 1 and February 13, 2005; and the third incident occurred on or about November 27, 2006. He was charged as follows: Count 1, rape (victim M.W.); Count 2, rape (victim M.W.); Count 3, complicity to commit rape (victim M.W.); Count 7, kidnapping (victim M.W.); Count 8, aggravated burglary (victim C.W.); Count 9, kidnapping (victim C.W.); Count 10, rape (victim C.W.); Count 11, attempted rape (victim C.W.); Count 12, kidnapping (victim C.W.); Count 13, rape (victim B.G.); Count 14, rape (victim B.G.); Count 15, gross sexual imposition (victim B.G.); Count 16, kidnapping (victim B.G.).[1] Counts 1, 2, 3, 7, 9, 10, 11, 12, 13, 14, 15, and 16 each included a sexually violent predator specification pursuant to R.C. 2941.148(A). Counts 7, 12, and 16 included a sexual motivation specification pursuant to R.C. 2941.147(A). Counts 8, 9, 10, 11, 12 included one- and three-year firearm specifications pursuant to R.C. 2941.141(A) and 2941.145(A).

{¶ 3} Townsend waived his right to an attorney and proceeded to a jury trial representing himself. The following pertinent evidence was presented at trial.

---

[1] Counts 4-7 named Townsend's codefendant, Kris Williams.

**{¶ 4}** On January 20, 2003, Townsend and codefendant Kris Williams abducted M.W. on West 52nd Street in Cleveland. They drove M.W. to a house on West 74th Street where Townsend lived with his wife. Both men sexually assaulted her; Townsend forced M.W. to have oral and vaginal sexual intercourse and attempted to have anal intercourse with her. M.W. called police and reported the assault. She went to MetroHealth Hospital for a rape-kit examination.

**{¶ 5}** M.W. testified at trial that her attackers were unknown to her and she was unable to identify them. The case was later investigated by the Cuyahoga County Prosecutor's Office Sexual Assault Kit Taskforce. DNA linked Townsend to the DNA recovered in the rape kit — the Ohio Bureau of Criminal Investigation ("BCI") notified authorities that Townsend's and Williams's DNA were consistent with two DNA profiles recovered from the rape kit. M.W. testified that she was unable to identify Townsend as one of her rapists, but stated that she never had consensual sex with Townsend and the only reason for his DNA to be present was because he was one of her attackers.

**{¶ 6}** Townsend testified on his own behalf and denied ever meeting M.W. Relative to M.W., the jury convicted Townsend of two counts of rape, one count of complicity to commit rape, and one count of kidnapping with a sexual motivation specification. The jury found Townsend to be a sexually violent predator on these counts.

**{¶ 7}** C.W. testified that she was raped by Townsend in 2005. C.W., who was only 13 years old at the time of the attack, knew Townsend through her mother.

Townsend told them his name was "Desmond Thomas." According to C.W., one night, Townsend broke into her mother's house, said he had a gun, and forced C.W. to have sexual intercourse with him. He also attempted another criminal sex act upon her.

{¶ 8} A month later, C.W. discovered she was pregnant and disclosed to her mother what had happened. They reported the assault to the police. C.W. terminated her pregnancy and the police were able to get a DNA match by matching Townsend's DNA to that of the fetus.

{¶ 9} C.W. and her mother identified Townsend at trial as the person they knew as Desmond Thomas.

{¶ 10} Townsend testified that he knew C.W. and her mother, but he never had sexual intercourse with C.W. He claimed that the DNA samples were contaminated.

{¶ 11} Relative to C.W., the jury found Townsend guilty of one count of rape, one count of attempted rape, and one count of kidnapping with a sexual motivation specification. The jury found that Townsend was a sexually violent predator for these counts. The jury acquitted Townsend of aggravated burglary, one count of rape, and all of the firearm specifications regarding this incident.

{¶ 12} On or about November 27, 2006, Townsend assaulted 17-year-old B.G. and forced her to have sexual intercourse with him and criminally touched her.

{¶ 13} B.G., who lived with Townsend and his wife at the time, underwent a sexual assault examination and reported to both the police and the examining nurse

that Townsend was her attacker. B.G. did not testify at trial. Townsend testified that he never touched B.G. In connection with the assault on B.G., the jury convicted Townsend of two counts of rape and one count of gross sexual imposition, but acquitted him of kidnapping. The jury further found Townsend to be a sexually violent predator.

{¶ 14} In sum, the jury convicted Townsend of five counts of rape, two counts of kidnapping with sexual motivation specifications, and one count each of complicity to commit rape, attempted rape, and gross sexual imposition. The rape, complicity, attempted rape and gross sexual imposition convictions were accompanied by findings that Townsend is a sexually violent predator.

{¶ 15} At the sentencing hearing, the court merged Count 12 with Count 9 and sentenced Townsend as follows: Counts 1, 2, 3, 7, and 11, five years to life in prison; Counts 9, 13, and 14, 10 years to life in prison; and Count 15, one year in prison. The court ordered all sentences to run consecutive for a total of 56 years to life in prison and classified Townsend as a sexual predator.

{¶ 16} Townsend raises eight assignments of error for our review. Further facts will be discussed under the appropriate assignments of error:

I. Defendant-Appellant's conviction must be reversed because he did not knowingly waive his right to counsel.

II. The Trial Court erred when it improperly convicted Defendant-Appellant when there was judicial bias against him.

III. The Trial Court erred when it convicted Defendant-Appellant while he was deprived of his right to self-representation.

IV.   The Trial Court erred when it violated Defendant-Appellant's right to compulsory process.

V.   The Trial Court erred in convicting Defendant-Appellant when convictions as to all allegations involving victim B.G. were against the manifest weight of the evidence.

VI.   The Trial Court erred when it convicted Defendant-Appellant on count three when there was a faulty jury instruction.

VII.   The sexually violent predator specifications as to Counts 1, 2, 3, 7, 9, 10, and 11 all must be vacated.

VIII.   The convictions for Counts 1 and 2, for Counts 9 and 11, and for Counts 13 and 14 should be merged.

## Law and Analysis

### Self-Representation

{¶ 17} In the first assignment of error, Townsend claims that he did not knowingly waive his right to counsel.

{¶ 18} The Sixth Amendment of the United States Constitution guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The right of self-representation, however, is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 171, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). A criminal defendant may proceed pro se only when the defendant voluntarily, knowingly, and intelligently elects to do so. *Gibson* at *id.*, citing *Faretta*. Thus, when a defendant invokes the right to self-representation, the trial court must ensure that the defendant knowingly and intelligently waives his or her right to counsel. *Gibson* at 377.

**{¶ 19}** A criminal defendant must also "unequivocally and explicitly invoke" his or her right to self-representation and the request must be timely made. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. In *Cassano*, the court held that the defendant's request for self-representation three days before the trial was untimely. *Id.* at ¶ 40, citing *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir.2000) (requests made six to ten days before trial are untimely), and *United States v. George*, 56 F.3d 1078, 1084 (9th Cir.1995) (request made on the eve of trial was untimely).

**{¶ 20}** The trial court has the discretion to deny a request for self-representation when it is not unequivocally and timely made. *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 50. A defendant need not have the skill and experience of a lawyer but he or she must be "made aware of the dangers and disadvantages of self-representation" so that the record shows that his or her choice was made "with eyes open." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 35. In addition, to be a knowing and intelligent waiver, "such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Gibson* at *id.*

**{¶ 21}** Crim.R. 44 provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in

serious offense cases the waiver shall be in writing." But there is no prescribed colloquy to establish an effective waiver; the information a defendant must possess to make an intelligent election "'depend[s] on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

{¶ 22} Townsend was initially represented by appointed counsel. At a pretrial hearing held on August 18, 2017, Townsend told the court that he was unhappy that he was not allowed access to discovery that had been marked "counsel only" and wanted to represent himself. The trial court discussed, at length, what it would mean for Townsend to proceed pro se and the benefits of having an attorney represent him. In an abundance of caution, the court referred Townsend to the court psychiatric clinic to be evaluated "in regards to representing himself pro se for upcoming trial." In a report dated October 20, 2017, the evaluating doctor, Jeffrey Khan, M.D., opined that Townsend "does not have a present mental condition that causes him to be unable to understand the nature and objectives of the proceedings against him" and "does not have a present mental condition that interferes with his ability to represent himself in his case."

{¶ 23} Dr. Khan based his opinion, in part, on finding that Townsend: (1) demonstrated an ability to testify relevantly by providing a clear and coherent account of the alleged offenses and how he would represent himself; (2) could

rationally make decisions about potential pleas; (3) did not possess any delusional beliefs about self-representation; (4) did not have any self-defeating motivations or apathy about the outcome of his case; (5) understood the legal resources available to him; (6) demonstrated he could maintain appropriate courtroom behavior; (7) had speech and thought processes that were goal directed and easy to follow; and (8) was able to apprise the likely outcome of his trial, weigh the risks and benefits of self-representation, and present rational reasoning for his continued desire to represent himself.

{¶ 24} At a subsequent pretrial hearing, held on October 30, 2017, Townsend again indicated he wanted to represent himself. Townsend told the court that he did not want to get "railroaded" by a court-appointed attorney. When asked, Townsend told the court that he could think of two attorneys he would allow to represent him but he could not afford to hire either attorney. The court and Townsend entered into a lengthy colloquy about the serious nature of the criminal allegations against him, the fact that DNA evidence was involved, and that he was facing a maximum life sentence.

{¶ 25} The court gave Townsend numerous warnings and asked that he reconsider before granting his motion to represent himself. After outlining each charge and potential sentences to Townsend, the trial court stated that it would allow Townsend to represent himself with the assistance of appointed standby counsel. Townsend also executed a written waiver form at the October pretrial

hearing, well before trial commenced in April 2018.  Thus, Townsend's request was timely and clearly made.

{¶ 26} The trial court engaged in an extensive colloquy with Townsend on more than one occasion and advised him of the nature of the charges, the range of allowable punishment, possible defenses to the charge and circumstances in mitigation thereof, and other essential facts.  The court explained trial procedures to Townsend, questioned him regarding his understanding of those procedures, and advised him that he would be held to the same standards as an attorney.  The court referred Townsend to the court psychiatric clinic, where Townsend underwent a thorough evaluation and was found to not have a mental condition that would interfere with his ability to represent himself.

{¶ 27} The court reviewed the written waiver of counsel and intent to proceed pro se form with Townsend, reading it aloud and asking if he understood it. Throughout these conversations, Townsend was adamant that he wanted to represent himself and repeatedly told the judge that he understood the ramifications of his decision.  Based on the record before us, Townsend's decision was knowingly, voluntarily, and intelligently made.

{¶ 28} In light of the above, the trial court did not err in granting Townsend's request to represent himself.  The first assignment of error is overruled.

**Trial Court Bias**

{¶ 29} In the second assignment of error, Townsend claims that his convictions should be vacated because the trial court was biased against him.

Specifically, Townsend claims that the trial court sua sponte sustained objections to his questions and berated Townsend in the presence of the jury.

{¶ 30} In *Litecky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the United States Supreme Court held that opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.* Instead, one must examine whether the remarks reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

{¶ 31} A review of the record shows that the questions the trial court did not allow or sua sponte sustained objections to were either inadmissible or inappropriate questions Townsend posed to witnesses. The court repeatedly warned Townsend that he could not make statements in front of the jury while questioning witnesses and repeatedly assisted Townsend in rephrasing questions or offered suggestions to assist him with presenting his case. Townsend chose to proceed pro se; before doing so, he acknowledged that he had been warned of the perils of proceeding pro se and dangers of self-representation.

{¶ 32} The second assignment of error is without merit and is overruled.

**Courtroom Procedure**

{¶ 33} In the third assignment of error, Townsend claims that he was denied his right to self-representation because the trial court allowed standby counsel to address issues on the record.

{¶ 34} Before trial, the court explained its courtroom procedure on the record. As an example, during the trial court's explanation of its voir dire process, the court explained that challenges for cause or peremptory challenges would be done at sidebar outside the hearing of the jury in order to protect prospective jurors from improper influence. The trial court determined that Townsend would not be allowed to approach the bench for these sidebar conversations due to security concerns. Instead, the court would allow standby counsel to communicate Townsend's wishes at sidebar.

{¶ 35} Evid.R. 611 empowers a trial court with broad discretion to conduct its courtroom in its own fashion. A review of the record shows that the trial court followed its outlined procedure during the trial — standby counsel relayed Townsend's arguments to the court during the appropriate time. Moreover, Townsend was allowed to personally address the court and argue his position when the jury was not present.

{¶ 36} We find no error in the court's stated procedure. Accordingly, the third assignment of error is overruled.

**Compulsory Process**

{¶ 37} In the fourth assignment of error, Townsend claims that his convictions should be reversed because the trial court failed to enforce a subpoena and thereby violated his right to compulsory process.

{¶ 38} This court has held that a defendant is not denied compulsory process by reason of a trial court's decision not to enforce the subpoena of a witness. *In the Matter of Timothy Reynolds*, 8th Dist. Cuyahoga No. 46585, 1983 Ohio App. LEXIS 12312, 7 (Nov. 3, 1983). Pursuant to R.C. 2317.21, in order to obtain the issuance of a writ of attachment from the court and secure the attendance of an absent witness, it is necessary for the disobeying witness to have been personally served with a prior subpoena. *See State v. Hardy*, 8th Dist. Cuyahoga No. 86722, 2007-Ohio-1159, ¶ 68-69, citing *State v. Wilcox*, 8th Dist. Cuyahoga Nos. 60851 and 60886, 1992 Ohio App. LEXIS 3043 (Jun. 11, 1992).

{¶ 39} During trial, Townsend told the court who he wanted to testify on his behalf. Townsend never demonstrated that any of his purported witnesses were personally served with a subpoena.

{¶ 40} This court has held that "[i]t is incumbent upon a party moving for a continuance to secure the attendance of witnesses to demonstrate that substantial favorable testimony will be forthcoming and that the witnesses are willing and available as well." *In the Matter of Timothy Reynolds* at *id.*, citing *United States v. Boyd*, 620 F.2d 129 (6th Cir.1980); *see also State v. Makin*, 8th Dist. Cuyahoga No. 104545, 2017-Ohio-7882, ¶ 21. Here, in addition to failing to demonstrate personal

service upon any witnesses, Townsend did not proffer the favorable testimony that he claims the absent witnesses would have given. Thus, Townsend cannot now argue that he suffered reversible prejudice.

{¶ 41} The fourth assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 42} In the fifth assignment of error, Townsend alleges that his convictions with respect to B.G. were against the manifest weight of the evidence.[2]

{¶ 43} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Whiteside*, 2d Dist. Montgomery No. 19482, 2003-Ohio-3030, ¶ 21. "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Wilson* at *id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of

---

[2]Townsend makes his claims with regard to B.G. only; therefore, we do not consider his manifest weight argument as to the other victims.

justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 44} In this case, the jury convicted Townsend of two counts of rape and one count of gross sexual imposition, but acquitted him of kidnapping in relation to his crimes against B.G. Townsend contends that these convictions were against the manifest weight of the evidence because B.G. did not testify at trial, her family members did not testify at trial, and there was no DNA evidence linking Townsend to the crime.[3]

{¶ 45} While it is true that B.G. did not testify at trial, Townsend has not provided any authority showing that a victim is required to testify in a rape case. Circumstantial and direct evidence "possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Here, the state relied on other evidence in presenting its case and it was up to the trier of fact to determine whether Townsend was guilty of the crimes with which he was charged.

{¶ 46} James Ogletree ("Ogletree") testified that he worked for the Maple Heights Police Department in 2006 and was the responding officer relative to this incident. Ogletree learned through his investigation that B.G. lived at her aunt's house. Townsend, who was married to the aunt, and their son also lived in this house; B.G. shared a bedroom with her young cousin. The aunt confirmed that B.G. was living with her, her son, and Townsend at the time in question.

---

[3]From the record, we gather that B.G. had moved outside of Ohio and, although the state tried to secure B.G.'s appearance at trial, she did not return to Ohio to testify.

{¶ 47} Ogletree testified that he recovered evidence from the scene. The evidence included Townsend's pajama bottoms, which the officer located on the floor of the bedroom where B.G. slept. Ogletree accompanied B.G. and her aunt to Marymount Hospital where SANE nurse Michelle Schreiber ("Nurse Schreiber") performed the rape-kit examination on B.G.

{¶ 48} The police subsequently submitted the following for DNA examination: B.G.'s rape kit, Townsend's DNA standard, a washcloth B.G. had used, B.G.'s underwear, and Townsend's underwear. BCI scientists did not locate any identifying DNA on the objects it tested. But BCI scientist Heather Bizub ("Bizub") found amylase, which is a component of saliva and other body fluids, on the skin stain swabs taken from B.G.'s left breast and right thigh. Bizub opined that the amylase was foreign to B.G., which meant that it did not come from her.

{¶ 49} Nurse Schreiber testified that she performed the rape kit examination on B.G. and took a narrative as part of her examination. The SANE report[4] noted that Townsend had forcible oral and vaginal intercourse with B.G. B.G. told the nurse that she had urinated, defecated, used a genital wash, changed clothes, drank, ate, brushed her teeth, and chewed gum after the assault but before the rape-kit exam. Nurse Schreiber testified that evidence can be wiped away by these actions.

---

[4]Townsend does not argue that the trial court erred in allowing B.G.'s medical records into evidence under Evid.R. 803; Townsend solely argues that his convictions were against the manifest weight of the evidence.

She further testified that even though there were no noticeable injuries to B.G.'s vagina, that fact did not indicate that a sexual assault did not occur.

{¶ 50} According to the narrative part of the exam, B.G. told Schreiber the following:

> He came in and started pulling my pants down and stuff. I said get off me or I'll tell my aunt. I didn't want to tell her. It's happened before but not like this. He was licking my privates. * * * He tried to put his privates in me. * * * I didn't let him. I moved out of the way. He did get it in for a little a few times, but I kept moving. He kept trying to lick me. I was moving and hitting him. He had his hand over my mouth. After he took my aunt to work he came back and tried licking me. I didn't let him so then he just kept talking to me.

{¶ 51} Townsend testified that he did not forcibly have sexual intercourse with B.G. B.G.'s aunt testified that the rape did not occur. But "[a] conviction is not against the manifest weight of the evidence because the [trier of fact] chose to believe the state's version of events over the defendant's version." *State v. Abdullahi*, 10th Dist. Franklin No. 18AP-222, 2018-Ohio-5146, ¶ 30, citing *State v. Hawk*, 10th Dist. Franklin No. 12AP-895, 2013-Ohio-5794, ¶ 59.

{¶ 52} B.G. consistently reported to the police and Schreiber that she was orally and vaginally raped by Townsend. The jury heard the testimony from the witnesses regarding the rape kit findings and DNA testing and heard testimony from Townsend and B.G.'s aunt that Townsend did not rape B.G. It is clear that the jury rejected Townsend's testimony; that decision was within the jury's province as the trier of fact. As explained above, weight and credibility issues are left to the trier of

fact, who is free to believe all, part, or none of the testimony of any witness, and we defer to the jury on evidentiary weight and credibility issues because it was in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh witness credibility.

{¶ 53} Accordingly, the fifth assignment of error is overruled.

**Jury Instructions**

{¶ 54} In the sixth assignment of error, Townsend claims that the trial court erred in giving a complicity instruction to the jury. Townsend did not object to the jury instruction; therefore, he has waived all but plain error. Crim.R. 52 (B).

{¶ 55} R.C. 2923.03 provides that "[n]o person shall be convicted of complicity under this section unless an offense is actually committed." According to Townsend, there was no proof that Townsend was complicit because the jury did not find that Williams raped M.W. But Williams and Townsend were not tried together; Williams entered into a plea agreement with the state and did not proceed to trial. *See State v. Williams*, Cuyahoga C.P. No. CR-17-614508-B.

{¶ 56} Here, the trial court instructed the jury that in order to convict Townsend of complicity by aiding and abetting, the jury would have to find "beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender."

{¶ 57} The evidence presented at trial was that M.W. was sexually assaulted by two men who forced her into their vehicle and took her to a house on W. 74th

Street in Cleveland. The men took turns forcing M.W. to have sex with them. DNA linked both men to the attack — Townsend's DNA was found on M.W.'s vaginal swabs and Williams's DNA was located on M.W.'s anal swabs. The men worked in concert to kidnap and rape M.W. Thus, there was sufficient evidence that Townsend was complicit in Williams's rape of M.W. and the trial court did not err in instructing the jury on complicity.

{¶ 58} The sixth assignment of error is overruled.

## Sexually Violent Predator Specifications

{¶ 59} In the seventh assignment of error, Townsend claims that his convictions on the sexually violent predator specifications should be vacated for the crimes he committed prior to April 29, 2005. We find merit to this assignment of error.

{¶ 60} Townsend did not challenge the sexually violent predator specifications with the trial court. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes waiver of such issue and * * * therefore need not be heard for the first time on appeal." *State v. Frierson*, 8th Dist. Cuyahoga No. 106841, 2019-Ohio-317, ¶ 6, citing *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. "However, the waiver doctrine of *Awan* has been ruled to be discretionary." *Frierson* at *id.*, citing *State v. Bruce*, 8th Dist. Cuyahoga No. 89641, 2008-Ohio-926, ¶ 9. Finding plain error in this instance, we exercise our discretion and consider Townsend's argument.

**{¶ 61}** Prior to April 29, 2005, R.C. 2971.01(H)(1) defined a "sexually violent predator" as "a person who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."

**{¶ 62}** In *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, the Ohio Supreme Court held that the conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction and the sexually violent predator specification are charged in the same indictment. In response to the *Smith* case, the General Assembly revised R.C. 2971.01(H)(1) to allow for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense. *State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 25; *see also State v. Stansell*, 2014-Ohio-1633, 10 N.E.3d 795 (8th Dist.). The current version of the statute provides that a "sexually violent predator" is "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1).

**{¶ 63}** In this case, Townsend committed the crimes against M.W. and C.W. prior to the amendment of R.C. 2971.01(H)(1). Townsend contends that he cannot be found to be a sexually violent predator on those counts because those crimes were committed prior the law's amendment.

{¶ 64} This court recently decided this issue. In *Frierson*, 8th Dist. Cuyahoga No. 106841, 2019-Ohio-317, this court considered whether the application of R.C. 2971.01(H)(1) to the defendant violated the Ex Post Facto Clause of the United States Constitution. In *Frierson*, as in this case, the state argued that the statute applied retroactively because amendment to the statute clarified, but did not change, the statute. This court disagreed:

> Retroactive changes in the measure of punishment are impermissibly ex post facto if they subject a defendant to a more severe sentence than was available at the time of the offense. The Ex Post Facto Clause found in Section 10, Article I of the United States Constitution, bars "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."
>
> We find the Ex Post Facto Clause to be applicable in this instance. Under the plain language in R.C. 2971.01(H)(1) as it existed at the time of Frierson's offenses, he was not eligible for the enhanced, indefinite sentencing under R.C. 2971.03 because he did not qualify as a sexually violent predator. As the Ohio Supreme Court stated in *Smith*, the words of R.C. 2971.01(H)(1) as it existed during the relevant periods clearly indicated that at the time of indictment, the person must have already been convicted of a sexually violent offense in order to be eligible for the specification. The legislature's subsequent amendment of the statute following *Smith* was not mere "clarification" as the state argues, but a significant and substantive change to the definition of "sexually violent predator," allowing, for the first time, the underlying conduct in an indictment to satisfy the specification without a prior conviction. As applied to Frierson, this amendment greatly enhanced his potential punishment by subjecting him to the indefinite sentencing found in R.C. 2971.03 whereas he was not subject to an enhanced sentence prior to the amendment. Therefore, we find that amended R.C. 2971.01(H)(1), as applied to Frierson, violates the Ex Post Facto Clause of the United States Constitution.

(Citations omitted.) *Id.* at ¶ 11-12.

{¶ 65} Thus, this court found that the legislature's subsequent amendment of the statute following *Smith* was not a mere "clarification," but a significant and substantive change to the definition of "sexually violent predator," allowing, for the first time, the underlying conduct in an indictment to satisfy the specification without a prior conviction. *Frierson* at *id.*

{¶ 66} Based on the authority as set forth in *Frierson*, we vacate Townsend's convictions on the sexually violent predator specifications as well as his underlying sentences on Counts 1, 2, 3, 7, 9, 10, 11, and 12.

{¶ 67} The case is remanded to the trial court for resentencing on Counts 1, 2, 3, 7, 9, 10, 11, and 12.

{¶ 68} The seventh assignment of error is sustained.

**Allied Offenses**

{¶ 69} In the eighth assignment of error, Townsend contends that the trial court should have merged Counts 1 and 2, Counts 9 and 11, and Counts 13 and 14.

{¶ 70} This court has consistently held rape involving different types of sexual activity, such as vaginal intercourse, digital penetration, and oral intercourse, arise from distinct conduct and are not considered allied offenses, even when committed during the same sexual assault. *State v. Nunez*, 8th Dist. Cuyahoga No. 102946, 2016-Ohio-812, ¶ 20, citing *State v. Williams*, 1st Dist. Hamilton No. 140199, 2015-Ohio-3968, ¶ 59-60; *State v. Farrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 33.

{¶ 71} Townsend contends that Counts 1 and 2 involving M.W., Counts 9 and 11 involving C.W., and Counts 13 and 14 involving B.G. should merge even though each act constituted separate, distinct acts of sexual activity. Count 1 charged forced vaginal intercourse and Count 2 involved forced oral intercourse against M.W. Count 9 involved forced vaginal intercourse and Count 11 involved attempted forced anal intercourse against C.W. Finally, Count 13 involved forced oral intercourse and Count 14 involved forced vaginal intercourse against B.G.

{¶ 72} In light of the aforementioned authority, Townsend's claim has no merit.

{¶ 73} The eighth assignment of error is overruled.

{¶ 74} Judgment affirmed in part, reversed in part. The sexually violent predator specifications on Counts 1, 2, 3, 7, 9, 10, 11, and 12 are vacated; case remanded for resentencing on only those counts.

It is ordered that appellant and appellee split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR