[Cite as *State v. McKinney*, 2024-Ohio-4642.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                                    :

                          Plaintiff-Appellee,      :      Case
                          No. 23CA21

          v.                                       :

KEITH D. MCKINNEY,                                 :      DECISION AND
                                                   JUDGMENT ENTRY

                          Defendant-Appellant.     :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and
Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting
Attorney, Ironton, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:9-17-24
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas
Court judgment of conviction and sentence. A jury found Keith
D. McKinney, defendant below and appellant herein, guilty of
eight counts of rape, in violation of R.C. 2907.02(A)(1)(b).
Appellant assigns the following errors for review:

          FIRST ASSIGNMENT OF ERROR:

          "APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE
          IN HIS REPRESENTATION OF THE APPELLANT."

SECOND ASSIGNMENT OF ERROR:

> "APPELLANT'S CONVICTIONS ARE NOT SUPPORTED
> BY THE EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

> "APPELLANT'S SENTENCE IS CONTRARY TO LAW."

{¶2} On June 1, 2021, a Lawrence County Grand Jury returned an indictment that charged appellant with 100 counts of first-degree rape, in violation of R.C. 2907.02(A)(1)(b). The indictment alleged that each offense involved a single victim less than 13 years of age.

{¶3} On April 4 and 5, 2022, the trial court held a jury trial. Before the trial began, the State asked the court to amend the indictment and "to nolle counts eleven through one hundred and proceed on counts one through ten." The court granted the State's request and the case proceeded to trial.

{¶4} The State called the then-13-year-old victim, S.H., as its first witness. S.H. testified that appellant, her mother's boyfriend, moved in with S.H.'s family around the end of 2019, and continued to live with her family for almost two years. S.H.'s mother worked evenings and appellant stayed home to watch S.H. and her siblings.

{¶5} According to S.H., when appellant first moved into the house, he seemed "pretty nice," but later "became very violent"

and would beat her and her sisters if they "made him a little bit angry."

{¶6} One day in late March 2020, S.H. (then 11 years of age) and appellant were in her mother's bedroom while the other children slept and S.H.'s mother was at work. Appellant had been playing a video game, and then he began to touch S.H., first above her clothes and then under her clothes. Appellant told S.H. that if she reported the event to anyone, she "would lose [her] family."

{¶7} A couple of days later, S.H. and appellant were again in her mother's bedroom, and this time, appellant asked S.H. "to get on the bed." S.H. said she complied because she "was scared" that if she did not, appellant would "beat [her]." She explained that he had beaten her in the past. Once on the bed, appellant removed her clothes and began to touch her. Appellant then placed his penis inside her vagina. S.H. remembers being in "a lot of pain" and stated that the encounter lasted about four or five minutes.

{¶8} Afterward, appellant continued to have intercourse with S.H. "[f]our or five times a week, whenever [her] mom was working." S.H. stated that the events occurred either in her room or in her mother's bedroom. In total, appellant engaged in

sexual intercourse with S.H. "probably close to a hundred" times.

{¶9}  In addition to sexual intercourse, S.H. indicated that appellant performed cunnilingus, the first time occurred  on her 12th birthday.  Appellant told her that "oral sex" "was going to be [her] birthday present from him."  After appellant completed this act, he engaged in vaginal intercourse with S.H.  He also kissed her for the first time and told her that "he loved [her]."

{¶10} One time, when S.H.'s mother was home asleep, and S.H. in the bathroom, appellant asked her "to perform oral sex on him."  S.H. complied with his instruction, but her sisters knocked on the bathroom door and interrupted the act.

{¶11} Near the end of 2020, S.H.'s mother kicked appellant out of the house because she became tired of appellant "hitting [her children]."  Her mother later allowed appellant back into the home, but first installed cameras throughout the house so she would know if appellant "was hitting" the children.  S.H. stated that things improved after her mother installed the cameras.

{¶12} One evening in 2021, after the cameras had been installed, S.H. went outside to look at the stars.  Appellant

also went outside and then engaged in vaginal intercourse with
S.H.  S.H. stated that she "remember[ed] being on the ground and
then [her] mom called."  Appellant "quickly got off of top of"
S.H.

{¶13} Appellant's sexual abuse eventually came to light when
one of S.H.'s friends "wanted a sex toy," and the friend asked
S.H. to talk to appellant about obtaining one.  S.H. stated that
she "really wanted" this friend to like her, so she asked
appellant.  Appellant told S.H. "that it came at a price" and
told the friend that she must "have to have a threesome with"
him and S.H.  Appellant stated that having a threesome "was his
dream."  They later went to a shopping mall and appellant
purchased a sex toy.  S.H. later told the friend about
appellant's inappropriate conduct.

{¶14} On cross-examination, defense counsel asked S.H. one
question: "Who's your mom's boyfriend now?"  S.H. responded,
"[h]is brother."

{¶15} The State's next witness, Ironton Police Officer Joe
Ross (retired at the time of trial), testified that on April 25,
2021, S.H.'s friend reported the allegations to her
grandparents, who, in turn, reported the allegations to the
police.  After speaking with S.H.'s friend, Ross talked with

appellant and S.H. and S.H. "was very distraught."  She was "actually laying down in the street, uh, screaming and crying." Neither officers nor S.H.'s mother could "get her to do anything" for 20 or 30 minutes.  Ross eventually informed S.H. that he was "going to leave" and then talked to appellant. Appellant agreed to accompany Ross to the police station.

{¶16} Upon arriving at the police station, Officer Ross told appellant about the allegations and stated that he would be recording the interview.  Near the start of the interview, appellant advised Ross that he has been diagnosed with schizophrenia, bipolar II disorder, anxiety, depression, and a manic disorder.

{¶17} Initially, appellant denied any inappropriate behavior with S.H.  He explained that S.H. asked him if he would "do stuff with her," like "intercourse," but he told her "no." Appellant later indicated that "if we were to do anything, it would have been consensual."  Appellant then stated that he and S.H. had engaged in consensual vaginal intercourse one time, which he believed occurred two months ago or longer.  Appellant also disclosed that, before they started to have intercourse, S.H. "gave [him] a blow job."  He reported that they only engaged in sexual conduct this one time and afterwards, he told

S.H. he "can't do this."  Appellant claimed that S.H. continued to ask him to "have sex," but he told her no.

{¶18} Appellant further asserted that "the intercourse itself . . . was more of an accident."  He elaborated that he has "certain boxers" that he no longer wears because his "junk would come out easily."  Appellant explained that one day (apparently when wearing these boxers), S.H. was not wearing any shorts or underwear and he "walk[s] around in [his] underwear all the time."  Appellant indicated that he "got up and she seen it and then she tried to get it."  Appellant said, "Oh!  Okay!"  So, in appellant's view, the sex "was consensual."  Afterward, appellant told S.H. they had made "a big mistake" and "we need to stop."  Appellant admitted that he "knew it was wrong," and claimed that "[i]t was a one-time thing."

{¶19} As the interview ended, Ross asked appellant if he had "been accused of this before."  Appellant responded, "Yes." Appellant's counsel objected and asked the trial court to strike appellant's statement.  The court subsequently instructed the jury "to disregard the statement, 'Have you been accused of this before?'" and appellant's response.  The court asked defense counsel if "the instruction [was] sufficient," and counsel

responded affirmatively.  After the interview ended, Ross arrested appellant and took him to jail.

{¶20} On cross-examination, defense counsel asked Ross whether law enforcement officers had conducted any DNA testing. Ross responded that officers had not tested any DNA.

{¶21} After Ross's testimony, the State rested.  Defense counsel indicated that appellant would not testify and the defense likewise rested.

{¶22} During the jury's deliberations, the jury submitted a question: "Do we need to have ten specific instances or dates to find [appellant] guilty of all ten counts?"  The court instructed the jury: "You must consider each count and the evidence applicable to each count separately.  Therefore, you must evaluate the testimony and exhibits and then determine whether the defendant is guilty or not guilty as to each of the ten counts."

{¶23} The jury later asked for a transcript of S.H.'s testimony.  The court advised the jury that a transcript did not exist.

{¶24} The jury later asked, "Is a witness's testimony to be considered to be proof beyond a reasonable doubt?"  The court instructed the jury:

Please refer to the jury instructions. You are not required to believe the testimony of any witness simply because the witness is under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your duty to decide what testimony to believe and what testimony not to believe. The testimony of one witness, if believed by you is sufficient to prove any disputed facts.

{¶25} After deliberation, the jury returned and found appellant guilty of counts one through eight and not guilty of counts nine and ten.

{¶26} On April 25, 2022, the trial court sentenced appellant to serve 25 years to life in prison for each of the eight rape offenses. The court ordered the sentences for counts one through four to be served consecutively to one another for a total minimum stated prison term of 100 years to life in prison. The court additionally found appellant to be a Tier Three Sexual Offender.

{¶27} On May 6, 2022, appellant filed a notice of appeal from the trial court's April 25, 2022 judgment. However, on April 27, 2023, we dismissed that appeal for a lack of a final, appealable order. We noted that the trial court did not file an entry that disposed of counts 11 through 100, the counts that the State agreed to "nolle." On May 9, 2023, the trial court entered a judgment entry that dismissed counts 11 through 100. This appeal followed.

I

{¶28} In his first assignment of error, appellant asserts that trial counsel failed to provide the effective assistance of counsel.  In particular, appellant contends that trial counsel was ineffective for failing to (1) meaningfully cross-examine S.H., (2) request a mistrial after the jury heard inadmissible statements, (3) present witnesses or evidence in appellant's defense, and (4) argue that the trial court should merge all of the counts.

A

{¶29} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense.  The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶30} To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶31} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 2009-Ohio-315, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

{¶32} Furthermore, "'[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 2006-Ohio-2815, ¶ 95 (citations omitted).

{¶33} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 2008-Ohio-482, ¶ 10 (4th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth

Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 2006-Ohio-6679, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156 (1988).

{¶34} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 2011-Ohio-3641, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 2016-Ohio-8126, ¶ 91 (prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require a defendant to affirmatively establish prejudice. *State v. Clark*, 2003-Ohio-1707, ¶ 22 (4th Dist.); *State v. Tucker*, 2002 WL 507529 (4th Dist. Apr. 2, 2002).

{¶35} Additionally, we have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 2017-Ohio-8656, ¶ 34 (4th Dist.); *State v. Jenkins*, 2014-Ohio- 3123, ¶ 22 (4th Dist.); *State v. Simmons*, 2013-Ohio-2890, ¶ 25 (4th Dist.); *State v. Halley*, 2012-Ohio-1625, ¶ 25 (4th Dist.); *State v. Leonard*, 2009-Ohio-6191, ¶ 68 (4th Dist.); *accord State v. Powell*, 2012-Ohio-2577, ¶ 86 (purely speculative argument cannot serve as the basis for ineffectiveness claim).

B

{¶36} Appellant first asserts that trial counsel failed to meaningfully cross-examine S.H. He points out that trial counsel only asked S.H. to identify her mother's current boyfriend and did not ask S.H. any questions to test the reliability or credibility of her testimony. Appellant argues that counsel did not (1) challenge S.H.'s recollection of the details surrounding the events, (2) question whether S.H. had a motivation to exaggerate or fabricate her testimony, or (3) inquire about the reason S.H. delayed telling anyone about the incidents. Appellant contends that trial counsel's decision not to challenge S.H.'s testimony falls "outside the realm of trial strategy" and thus constitutes deficient performance.

{¶37} Appellant additionally asserts that trial counsel's deficiency prejudiced his defense.  He notes that during deliberations, the jury asked the court about "the number of counts and the evidence" and whether a witness's testimony constitutes "proof beyond a reasonable doubt."  Appellant alleges that the jury's questions show that the jury "deliberated as to the number of events alleged and the number of events testified to."  He observes that the jury did not find appellant guilty of all ten counts and asserts that the jury thus "did not believe S.H.'s allegation as [to] the number of events she claimed occurred."

{¶38} Appellant further faults trial counsel for asking S.H. only one question about the identity of her mother's current boyfriend.  Appellant contends that trial counsel "failed to subject the prosecution's primary witness to meaningful and adversarial testing" and that this failure warrants a finding that counsel's performance was presumptively prejudicial.

1

{¶39} In most cases, a defendant's failure to satisfy either part of the *Strickland* test (deficient performance plus prejudice) is fatal to an ineffective-assistance claim. *Madrigal*, 87 Ohio St.3d at 389; *State v. Jones*, 2008-Ohio-968, ¶

14 (4th Dist.).  The United States Supreme Court, however, crafted a narrow exception to the general rule that a defendant must prove that counsel's deficient performance prejudiced the outcome of the proceedings.  *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (noting that prejudice presumed in narrow circumstances); *United States v. Cronic*, 466 U.S. 648, 658-59 (1984); *see also Garza v. Idaho*, 586 U.S. 232, 237 (2019).  For example, "the complete denial of counsel" is "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified."  *Cronic*, 466 U.S. at 658-59.  This complete denial-of-counsel prejudice presumption typically applies if an "accused is denied counsel at a critical stage" of the proceedings.  *Id.*  Likewise, the prejudice presumption may apply "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Id.*  The prejudice presumption also may apply if "counsel is called upon to render assistance under circumstances where competent counsel very likely could not."  *Bell v. Cone*, 535 U.S. 685, 695-98, (2002), citing *Cronic*, 466 U.S. at 659-662, and *Powell v. Alabama*, 287 U.S. 45 (1932).

{¶40} A defendant who asserts that the presumption applies because defense counsel failed to subject the prosecution's case

to meaningful adversarial testing must show that "the attorney's failure [was] complete." *Bell*, 535 U.S. at 697.  Thus, a defendant is not entitled to the presumption if the defendant merely asserts that counsel failed to oppose the prosecution's case "at specific points." *Id.*  Instead, the presumption may apply when "'counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'"  (Emphasis in original.) *Id.*, quoting *Cronic*, 466 U.S. at 659; *accord State v. Drain*, 2022-Ohio-3697, ¶ 69.  A defendant's challenge to counsel's failure to oppose the prosecution's case "at specific points" thus is "plainly of the same ilk as other specific attorney errors" that are "subject to *Strickland*'s performance and prejudice components."  *Bell*, 535 U.S. at 697-698, citing *Burger v. Kemp*, 483 U.S. 776, 788 (1987), and *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (observing that *Burger* and *Darden* applied *Strickland* standard, not *Cronic*, when defendants challenged counsel's decision at capital sentencing hearing not to offer any mitigating evidence).

{¶41} In the case at bar, appellant does not argue that counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.  Instead, he contends that trial counsel failed at a specific point-counsel's cross-examination

of the victim.  Appellant asserts that during cross-examination, counsel failed to subject the victim's testimony to meaningful adversarial testing.  Consequently, because appellant does not argue that counsel's failure was complete, the presumed-prejudice standard does not apply.  Thus, appellant must establish both that counsel's decision to limit his cross-examination of the victim constituted deficient performance and that this deficient performance affected the outcome of the proceedings.

2

{¶42} In general, "'[t]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'"  *State v. Spaulding*, 2016-Ohio-8126, ¶ 90, quoting *State v. Conway*, 2006-Ohio-2815, ¶ 101.  Furthermore, a defendant alleging that trial counsel performed deficiently during cross-examination "must identify the questions he believes [defense] counsel should have asked and must provide some sense of the information that might have been elicited.  Otherwise, [courts] will presume that the choice to forgo cross-examination 'constituted a legitimate tactical decision.'"  *State v. Beasley*, 2018-Ohio-493, ¶ 155, citing and quoting *State v. Frazier*, 2007-Ohio-5048, ¶ 220, and

citing *State v. Foust*, 2004-Ohio-7006, ¶ 90 (holding that counsel made a legitimate tactical decision to forgo additional cross-examination where the defendant "fail[ed] to explain how further cross-examination of [the witness] would have made a difference in his case").

{¶43} In the case sub judice, appellant does not identify any particular questions that he believes trial counsel should have asked S.H. and does not provide any sense of the information that counsel might have elicited if he had asked additional questions.  Instead, appellant generally asserts that trial counsel should have (1) challenged "S.H.'s recollection of details," (2) inquired whether she had a motive "to exaggerate or fabricate her testimony," and (3) questioned why S.H. did not tell anyone about the allegations for more than one year. Appellant does not suggest that asking these types of questions would have elicited information that would have helped his defense, however.  Indeed, asking these questions may have elicited harmful information.  The victim testified that she was afraid of appellant and in the past he had beaten her and her sisters.  Moreover, the victim's mother had installed cameras around the home to keep watch over appellant's behavior to ensure that he did not harm the children, which tends to support

the victim's statement that appellant beat her in the past and was afraid of him. Thus, had defense counsel asked S.H. about her delay in reporting the allegations, for example, the victim may have responded that the delay was due to her fear of appellant and his statement to her that if she told anyone, she would "lose [her] family."

{¶44} Furthermore, this court previously rejected ineffective-assistance challenges a trial counsel's decision to limit cross-examination of a child victim of sexual assault. *State v. Vulgamore*, 2021-Ohio-3147 (4th Dist.); *State v. Guysinger*, 2017-Ohio-1167 (4th Dist.). In *Guysinger*, we observed that trial counsel had "not meaningfully or forcefully challenge[d the victim]'s recollection of the details of the crimes, did not raise issues concerning any possible motivation she may have had to fabricate her testimony, and did not contest her reason for delaying her reporting of the crimes for approximately two years." *Id.* at ¶ 28. We nevertheless concluded that trial counsel did not fail to provide the effective assistance of counsel. We explained that trial counsel's cross-examination fell within "the realm of trial strategy" and that any deficiency did not prejudice the defendant. *Id.* at ¶ 29. We elaborated as follows:

In light of the very sensitive nature of this case, which involves a child victim of sexual assault, counsels' decision not to extensively cross-examine A.G. does not, by itself, constitute ineffective assistance of trial counsel. *See, e.g., State v. Hughes*, 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶ 60 (trial counsel's failure to cross-examine any of the state's witnesses, including the child victim, in a case involving rape and gross sexual imposition, did not constitute ineffective assistance, reasoning that "[t]rial counsel's decision not to cross-examine N.P. and F.H., both minors, is a reasonable and understandable trial tactic given the sensitive nature of this case"); *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 20-23 (trial counsel's decision not to cross-examine child victims in case involving rape and gross sexual imposition was within the realm of sound trial strategy and did not constitute ineffective assistance of counsel). Various reasons exist to support the tactical decision to conduct a very brief cross-examination of the child-victim.  Trial counsel could have been wary about a contentious cross-examination of A.G., who had testified emotionally on direct examination.  A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury.  Also, trial counsels' limited cross-examination of A.G. did elicit a possible reason for A.G. to be angry at appellant—she was forced, against her wishes, to move her bedroom into the laundry room. Moreover, it is not at all clear that additional questioning of A.G. would have necessarily resulted in favorable testimony concerning the details of the offenses and her reason for not reporting the crimes earlier than she did.  A.G. testified on direct examination that she did not report the crimes because she was scared.  Additional cross-examination on these matters may have simply bolstered the state's case. *See State v. Freeman*, 8th Dist. Cuyahoga No. 92809, 2010-Ohio-3714, ¶ 51 (decision not to cross-examine child victims of rape and gross sexual imposition about why they failed to come forward with their allegations sooner did not constitute ineffective assistance when they explained on direct examination because "[i]t would have been foolish for defense counsel to re-elicit this

damning testimony and explanations from the children on cross-examination").

*Id.* at ¶ 29; *accord Vulgamore* at ¶ 58 ("in light of the sensitive nature of the case involving a child victim of sexual assault under the age of 13, trial counsel's decision not to conduct a more aggressive cross-examination of M.H. does not, by itself, constitute ineffective assistance of trial counsel. Trial counsel could have been wary about a contentious cross-examination of M.H. who had the prior emotional response to seeing Appellant exit the elevator after lunch break. A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury"). We also "readily acknowledge[d] trial counsel should ask questions to discern potential inconsistencies or inaccuracies with a witness' memory or perception." *Guysinger* at ¶ 31. We nevertheless concluded that trial counsel justifiably may determine that additional cross-examination of a child victim could "alienate[] the jury and actually bolster[] the state's case." *Id.* "Also, by engaging in a more limited cross-examination of a child victim," trial counsel "may prevent the state from engaging in a redirect examination" that could reveal even more damaging information. *Id.; compare State v. Hammond*, 2019-Ohio-4253, ¶ 43 (4th Dist.) (pointing out that trial counsel's cross-examination of the

child victim "backfired" because it revealed damaging information).

**{¶45}** In the case at bar, trial counsel likewise justifiably may have determined that further cross-examination of the then-13-year-old victim might have alienated the jury or bolstered the State's case. Additionally, "whether further questioning would have unearthed any useful information is speculative." *State v. Frazier*, 2007-Ohio-5048, ¶ 220. And speculation is insufficient to establish an ineffective-assistance claim. *E.g., Guysinger* at ¶ 31, citing *Short*, 2011-Ohio-3641, at ¶ 119 (mere speculation cannot support either the deficient-performance or prejudice requirements of an ineffective-assistance claim). We therefore do not agree with appellant's argument that trial counsel was ineffective for failing to subject S.H. to additional cross-examination.

C

**{¶46}** Next, appellant asserts that trial counsel performed ineffectively for failing to ask the court, before trial, to redact an incriminating statement that appellant made during his videotaped police interview. In the interview, appellant admitted that he had "been accused of this" when he was 18 years of age. Appellant contends that trial counsel's failure to ask

the court to review and redact the statement before the jury heard it prejudiced his defense because "[t]he jury could not 'unhear'" the statements. Appellant argues that trial counsel should have been aware of the statements before trial and should have filed a motion in limine to ensure that the video had been edited before playing it before the jury.

**{¶47}** Here, we believe that even if trial counsel performed deficiently by failing to file a motion in limine to redact the statement before trial, appellant cannot establish that failing to redact the statement before trial affected the outcome of the proceedings. Instead, as we explain in our discussion of appellant's second assignment of error, our review of the record reveals overwhelming evidence of appellant's guilt. Moreover, appellant even admitted that he engaged in sexual conduct with the victim. Thus, we do not see a danger that the jury found appellant guilty based upon a fleeting statement that he had "been accused of this" when he was 18 years of age. *See State v. Trimble*, 2009-Ohio-2961, ¶ 175 (brief, isolated remark regarding defendant's prior conviction did not prejudice defendant due to "the overwhelming evidence establishing his guilt"); *State v. Ellison*, 2017-Ohio-284, ¶ 31 (4th Dist.) (in a rape case involving a child victim, no prejudicial error

resulted from testimony that the defendant had been in prison when the evidence that the defendant raped his daughter was "so overwhelming"; the victim testified that the defendant raped her, and the defendant confessed and apologized to the victim).

**{¶48}** Moreover, the trial court gave the jury a curative instruction to disregard appellant's statement.  Courts will generally presume that "curative instructions remove[] any prejudice."  *State v. McKnight*, 2005-Ohio-6046, ¶ 220; *see Greer v. Miller*, 483 U.S. 756, 766, fn. 8 (1987) (courts generally presume that a jury follows instructions to disregard evidence unless there is an "overwhelming probability" that the jury will be unable to follow the instruction and a strong likelihood that the evidence would be "devastating" to the defendant); *Bruton v. United States*, 391 U.S. 123, 135 (1968) (stating that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored").

**{¶49}** Consequently, we do not agree with appellant's argument that trial counsel performed ineffectively for failing to file a pretrial motion that asked the court to redact the

statement in which appellant indicated that he had "been accused of this" in the past.

D

**{¶50}** Appellant also asserts that trial counsel performed ineffectively for the failure to present evidence or testimony in his defense.  Specifically, appellant faults trial counsel for the failure to present evidence regarding his mental health to help show his mental state at the time of the acts, which appellant characterizes as a "defense."

**{¶51}** However, even if we accept the proposition that trial counsel performed deficiently by failing to present this type of evidence, appellant does not identify how evidence regarding his mental state would have caused the jury to question whether he could be held criminally responsible for raping S.H., who was less than 13 years of age at the time of the offenses.  Indeed, the jury found appellant guilty of rape under R.C. 2907.02(A)(1)(b),[1] which is a strict-liability offense.  *See In*

---

R.C. 2907.02(A)(1)(b) provides as follows:

No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

*re D.B.*, 2011-Ohio-2671, ¶ 30 ("The plain language of the statute makes it clear that every person who engages in sexual conduct with a child under the age of 13 is strictly liable for statutory rape. . . ."); *see also State v. Mole*, 2016-Ohio-5124, ¶ 66 (lead opinion) (R.C. 2907.02(A)(1)(b) "eliminates scienter from the offense of rape when the victim is under the age of 13").  Thus, an offender's mental state is immaterial for purposes of R.C. 2907.02(A)(1)(b).  *See State v. Alexander*, 2023-Ohio-123, ¶ 16 (3d Dist.) ("R.C. 2907.02(A)(1)(b) only has three relevant elements: (1) the victim was not the offender's spouse; (2) the victim was under the age of 13 at the time of the sexual conduct; and (3) the offender engaged in sexual conduct with the victim.").  Consequently, it does not appear that appellant's mental state at the time of the offenses would have been relevant.  As such, the failure to present this type of evidence could not have been prejudicial.

---

.  .  .  .

 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶52} Moreover, given its irrelevance, trial counsel could have quite reasonably decided not to present any evidence regarding appellant's mental health.  If counsel had, the trial court would have been well within its discretion to exclude this type of evidence.  Trial counsel also reasonably may have thought that the jury would not have a favorable view of appellant if he sought to use his alleged mental-health issues as an excuse for raping a child less than 13 years of age.

{¶53} Furthermore, to the extent that appellant's ineffectiveness claim relies upon evidence that is not contained in the record, we may not consider it on direct appeal.  *State v. Belton*, 2016-Ohio-1581 (on direct appeal, defendant cannot rely upon evidence outside of the record); *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001) (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal); *State v. Ishmail*, 54 Ohio St.2d 402, 406 (1978) (the appellate court is limited to what transpired as reflected by the record on direct appeal).

{¶54} Accordingly, based upon the foregoing reasons we disagree with appellant's argument that trial counsel performed

ineffectively for failing to present evidence regarding his

mental health.

E

{¶55} Appellant additionally contends that trial counsel

performed ineffectively for the failure to ask the trial court

to merge the offenses.[2]  He alleges that his conduct was similar

in import and committed with the same animus and motivation.

{¶56} As we explain in our discussion of appellant's third

assignment of error, we believe that a review of the record does

not show that appellant committed eight acts of rape at the same

time and with the same animus.  Instead, the evidence shows

eight distinct acts of rape.  Thus, trial counsel did not

perform deficiently by failing to ask the court to merge the

offenses.

{¶57} Accordingly, based upon the foregoing reasons, we

overrule appellant's first assignment of error.

---

[2] In his brief, appellant claims that trial counsel should
have asked the court to merge counts one through ten.  We note,
however, that the jury found appellant not guilty of counts nine
and ten.  We therefore construe appellant's argument to be a
challenge to counts one through eight.

II

{¶58} In his second assignment of error, appellant argues that his convictions are against the manifest weight and sufficiency of the evidence.  He contends that the testimony does not establish that he committed eight separate counts of rape.

{¶59} Initially, we observe that "sufficiency" and "manifest weight" present two distinct legal concepts.  *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 23 ("sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380 (1997), syllabus; *accord State v. Jordan*, 2023-Ohio-3800, ¶ 15 (lead opinion).  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.  *Thompkins*, 78 Ohio St.3d at 386.  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  *Id.* at syllabus.  The "critical inquiry" on appeal "is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)  *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *e.g., State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶60} Thus, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution.  *E.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did.  *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶61} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."  *Thompkins*, 78 Ohio St.3d

at 387.  "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'"  *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus; *accord State v. Nicholson*, 2024-Ohio-604, ¶ 71.  A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'"  *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328.  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio- 1744, ¶ 31 (4th Dist.).  "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'"  *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d

Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug.

22, 1997).  As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is
> manifestly against the weight of the evidence, every
> reasonable intendment must be made in favor of the
> judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one
> construction, the reviewing court is bound to give it
> that interpretation which is consistent with the
> verdict and judgment, most favorable to sustaining the
> verdict and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10

Ohio St.3d 77, 80 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d,

Appellate Review, Section 60, at 191-192 (1978).  Thus, an

appellate court will leave the issues of weight and credibility

of the evidence to the fact finder, as long as a rational basis

exists in the record for its decision.  *State v. Picklesimer*,

2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-

Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as

the trier of fact has some factual and rational basis for its

determination of credibility and weight.").

{¶62} Accordingly, if the prosecution presented substantial,

credible evidence upon which the trier of fact reasonably could

conclude, beyond a reasonable doubt, that the essential elements

of the offense had been established, the judgment of conviction

is not against the manifest weight of the evidence.  *E.g., Eley*;

*accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (judgment not against the manifest weight of evidence when "'"the greater amount of credible evidence"'" supports it).  A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *accord McKelton* at ¶ 328.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

{¶63} We also observe that when an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.  *E.g., State v. Waller*, 2018-Ohio-2014, ¶ 30 (4th Dist.).  Thus, a determination

that the weight of the evidence supports a conviction also is dispositive of an insufficient-evidence claim.  *Id.*

**{¶64}** In the case sub judice, R.C. 2907.02(A)(1)(b) contains the essential elements of appellant's rape offenses and provides as follows:

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
> . . . .
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.01(A) defines "sexual conduct" as follows:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶65}** Here, appellant does not challenge the adequacy or persuasiveness of the evidence to support the elements of rape. Instead, he argues that the State did not present sufficient evidence that he committed eight separate rape offenses and argues, for this same reason, that his convictions for all eight offenses are against the manifest weight of the evidence.

{¶66} After our review of the record, however, we do not believe that appellant's eight rape convictions are against the manifest weight of the evidence. Instead, our review reveals that the record contains substantial, competent and credible evidence to support a finding that he committed eight distinct offenses. For this same reason, sufficient evidence supports appellant's eight rape convictions.

{¶67} We first observe that "a rape conviction may rest solely on the victim's testimony, if believed." *State v. Patterson*, 2014-Ohio-1621, ¶ 40 (8th Dist.). Moreover, no requirement exists "that a rape victim's testimony be corroborated as a condition precedent to conviction." *State v. Lewis*, 70 Ohio App.3d 624, 638 (4th Dist.1990); *accord State v. Johnson*, 2006-Ohio-6404, ¶ 53 ("[c]orroboration of victim testimony in rape cases is not required"); *State v. Horsley*, 2018-Ohio-1591, ¶ 74 (4th Dist.) (quoting *Patterson* and *Lewis* for the foregoing two propositions); *State v. Barnes*, 2014-Ohio-47, ¶ 31 (2d Dist.) (physical evidence need not corroborate "testimonial evidence of sexual abuse").

{¶68} Furthermore, simply because a victim may delay reporting sexual abuse does not mean that the victim lacks credibility. Instead, "the jury [i]s entitled to consider the

credibility of the victim's testimony and [the victim's] explanation for the delayed disclosure." *State v. Lykins*, 2019-Ohio-3316, ¶ 50 (4th Dist.); *see State v. Bones*, 2015-Ohio-784, ¶ 33-34, 40 (2d Dist.) (concluding that defendant's rape convictions are not against the manifest weight of the evidence even though victim did not report abuse until several years later).

**{¶69}** In the case sub judice, the young victim testified to extensive sexual abuse that appellant committed between March 2020 and early 2021. She recounted separate incidents in which appellant engaged in sexual conduct with her, whether through vaginal intercourse, fellatio, or cunnilingus. The victim stated that the first encounter occurred in March 2020, described the time of day that it occurred (nighttime) and the location (her mother's bedroom). She further indicated that appellant touched her "lower-part areas" "under her clothes." We observe, however, that the victim did not specifically state that appellant digitally penetrated her vagina with his finger(s). Instead, she agreed with the prosecutor's characterization of appellant's conduct as "inappropriate."

**{¶70}** The second incident followed "a couple of days later." Like the first event, she and appellant were in her mother's

bedroom.  Appellant instructed her to get on the bed, remove her clothes, and he placed his penis inside her vagina.  She recalls being in "a lot of pain."  The victim reported that from that point on, appellant engaged in sexual conduct with her four to five times per week.

{¶71} The victim also testified that additional acts of intercourse occurred either in her mother's bedroom or in the victim's bedroom, and that all of the events, except for one, happened at night, when her mother was not home and her sisters were sleeping.  The victim indicated that appellant would ask her to either enter his bedroom or he would enter her bedroom, and then, he would start by "touching" her in her "lower part areas" before he engaged in intercourse.

{¶72} The victim additionally described an occasion when appellant told her that he would give her cunnilingus for her 12th birthday present.  She stated that after he completed this act, he engaged in vaginal intercourse.  The victim reported that appellant ejaculated on this occasion, but it was not the first time that he had done so.  She explained that appellant's pattern was to ejaculate on the floor and then clean it up the next day.  She stated that appellant ejaculated "[p]retty much every time."

{¶73} The victim further stated that appellant performed cunnilingus on additional occasions, but she could not recall the number-only that it "was more than twice."

{¶74} Appellant also asked the victim to perform fellatio, which she did, but "[o]nly once."  The victim explained that this event occurred during the day, when her mother was asleep and her sisters awake.  She and appellant were in the bathroom, and appellant asked her to perform fellatio.  When she did so, her sisters knocked on the door and interrupted.

{¶75} The victim further explained that after her mother installed cameras inside the house to keep tabs on appellant's conduct, appellant had vaginal intercourse with her on the back porch, outside the purview of the cameras.  She reported that this incident occurred in 2021 and was the last time appellant sexually assaulted her.

{¶76} Furthermore, we point out that appellant admitted that he engaged in vaginal intercourse with the victim, but claimed it happened only once.  He also incredulously claimed that the vaginal intercourse was "an accident."  Appellant stated that it occurred in the victim's bedroom, but he could not recall when he thought that it might have happened two months earlier.

Appellant additionally stated that the victim performed fellatio on him before they engaged in intercourse.

**{¶77}** In total, the victim testified that appellant sexually assaulted her "close to a hundred or over" times.  Even if the victim did not describe each event in excruciating detail, her testimony contains enough detail regarding specific and distinct events to establish that appellant committed many separate acts of rape.  Her testimony describes the following instances of sexual conduct: (1) a few days after appellant first touched the victim "inappropriately," appellant had vaginal intercourse with the victim; (2) additional acts of vaginal intercourse occurred in her bedroom or in her mother's bedroom "four or five times" per week; (3) on the victim's 12th birthday, appellant performed cunnilingus; (4) also on the victim's 12th birthday, appellant engaged in vaginal intercourse with the victim, *see generally State v. Nicholas*, 66 Ohio St.3d 431, 435 (1993) (three separate instances of vaginal intercourse, cunnilingus, and digital penetration of the vaginal cavity constitute separate crimes with a separate animus, and thus, they do not constitute allied offenses of similar import); (5) appellant performed cunnilingus on at least two other occasions (i.e., "more than twice"); (6) the victim performed fellatio on appellant; and (7) appellant

engaged in sexual intercourse with the victim on the back porch. The victim's testimony thus constitutes ample evidence to establish, beyond a reasonable doubt, that appellant committed eight distinct acts of rape. *State v. Buckland*, 2023-Ohio-2095, ¶ 16 (12th Dist.) (upholding conviction for three counts of gross sexual imposition when victim "testified that she was repeatedly subjected to sexual abuse, [and] she detailed three distinct incidents of sexual abuse, in three distinct areas of her home"); *State v. Palmer*, 2021-Ohio-4639, ¶ 28 (7th Dist.) (upholding 12 rape convictions and five gross sexual impositions convictions when victim testified that appellant "forced his penis inside of her vagina at least 10 times, put his mouth on her 'private area' more times than she could count, but more than 10 times and less than 15, and digitally penetrated her more than five times"); *State v. Artz*, 2015-Ohio-5291, ¶ 35 (2nd Dist.) (victim's testimony adequately showed that defendant engaged in five distinct acts); *State v. Clemons*, 2011-Ohio-1177, ¶ 42 (7th Dist.) (victim's testimony that "sexual conduct occurred 'way over ten' times" and that victim and defendant engaged in "sexual intercourse on the living room couch more than ten times" adequately supported defendant's eight convictions for sex-related offenses); *State v. Willard*, 144

Ohio App.3d 767, 771 (10th Dist.2001) (the victim's testimony that over a five-year period, the defendant sexually assaulted her approximately one thousand times, along with further details about some of those events, adequately supported eight rape convictions).

**{¶78}** Additionally, appellant confessed that the victim performed fellatio and that they subsequently engaged in vaginal intercourse. Appellant stated that this event occurred about two months earlier and that it occurred in the victim's bedroom. Thus, appellant actually admitted that he committed two distinct acts of rape.

**{¶79}** We also observe that the record reflects that the jury thoughtfully deliberated the matter before it reached its verdict. The jury asked a question to clarify whether a witness's testimony constituted adequate evidence to find a defendant guilty. The jury also asked whether it needed to find "ten specific instances or dates" to find appellant guilty of all ten counts. These questions show that the jury carefully evaluated the evidence that pertained to each count. The jury weighed the victim's testimony, along with appellant's statements made during his police interview, and ultimately

found the testimony sufficiently credible to conclude that appellant committed eight rape offenses.

{¶80} Here, we find nothing in the record to indicate that the jury lacked a rational basis to credit the victim's testimony. In fact, the police officer's description of the victim's reaction when the officer arrived at her house to discuss the allegations lends credence to the victim's account that appellant subjected her to repeated acts of rape over a prolonged period of time. The officer testified that the victim was lying in the street and crying inconsolably for 20 to 30 minutes. The jury was entitled to infer that the victim's conduct established that she had experienced significant trauma as a result of appellant's repeated acts of rape.

{¶81} Additionally, the jury was entitled to discredit appellant's testimony that he and the victim had engaged in "consensual" sexual conduct only once, especially given his incredulous claim that it was "more of an accident."

{¶82} Consequently, based upon the foregoing reasons, we do not believe that the case at bar is one of those exceptional cases in which the evidence weighs heavily against appellant's eight rape convictions. We therefore disagree with appellant that his convictions are against the manifest weight of the

evidence.  We likewise disagree that the record fails to contain

sufficient evidence to support his eight rape convictions.

{¶83} Accordingly, based upon the foregoing reasons, we

overrule appellant's second assignment of error.

III

{¶84} In his third assignment of error, appellant asserts

that his sentence is contrary to law.  In particular, appellant

contends that, because the State failed to establish that

appellant committed the eight rape offenses separately and with

a separate animus, the trial court should have merged the

offenses and imposed "a single sentence."[3]

{¶85} We initially observe that appellant did not argue at

sentencing that the trial court should merge any of the rape

offenses.  Thus, appellant forfeited all but plain error.  *State*

*v. Bailey*, 2022-Ohio-4407, ¶ 7; *State v. Rogers*, 2015-Ohio-

2459, ¶ 21, 28; *State v. Linkous*, 2013-Ohio-5853, ¶ 41 (4th

Dist.).  Appellate courts, nevertheless, have discretion to

consider "[p]lain errors or defects affecting substantial

rights."  Crim.R. 52(B); *e.g., Risner v. Ohio Dept. of Natural*

---

[3] Appellant limits his "contrary to law" argument to a claim
that the trial court should have merged the offenses.  We limit
our review accordingly.

*Resources, Ohio Div. of Wildlife*, 2015-Ohio-3731, ¶ 27.  "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights," i.e., the trial court's error must have affected the outcome of the trial.  *State v. Obermiller*, 2016-Ohio-1594, ¶ 62, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  However, even when a defendant demonstrates that a plain error or defect affected his substantial rights, the Ohio Supreme Court repeatedly has emphasized that courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"  *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *e.g., State v. Bailey*, 2022-Ohio-4407, ¶ 14 ("the plain-error doctrine is warranted only under exceptional circumstances to prevent injustice").

**{¶86}** R.C. 2941.25 specifies when a defendant may be convicted of multiple counts under the same indictment or information.  The statute provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may

LAWRENCE, 23CA21                                                    47

contain counts for all such offenses, but the defendant
may be convicted of only one.
        (B) Where the defendant's conduct constitutes two
or more offenses of dissimilar import, or where his
conduct results in two or more offenses of the same or
similar kind committed separately or with a separate
animus as to each, the indictment or information may
contain counts for all such offenses, and the defendant
may be convicted of all of them.

{¶87} The Ohio Supreme Court has "consistently recognized
that the purpose of R.C. 2941.25 is to prevent shotgun
convictions, that is, multiple findings of guilt and
corresponding punishments heaped on a defendant for closely
related offenses arising from the same occurrence." *State v.
Johnson*, 2010-Ohio-6314, ¶ 43, citing *Maumee v. Geiger*, 45 Ohio
St.2d 238, 242 (1976).  R.C. 2941.25(A) thus allows only a
single conviction when the same conduct constitutes allied
offenses of similar import.

{¶88} Courts that are determining whether offenses are
allied offenses of similar import within the meaning of R.C.
2941.25 must answer three essential questions: "(1) Were the
offenses dissimilar in import or significance?  (2) Were they
committed separately? and (3) Were they committed with separate
animus or motivation?" *State v. Earley*, 2015-Ohio-4615, ¶ 12,
citing *Ruff* at ¶ 31 and paragraphs one, two, and three of the

syllabus.  "An affirmative answer to any of the above will permit separate convictions."  *Id.*

**{¶89}** Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm."  *Ruff* at ¶ 21.  Additionally, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense."  *Id.* at ¶ 26.  Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."  *Id.* at ¶ 23.

**{¶90}** Different types of rape committed within the same sexual assault such as "vaginal intercourse, cunnilingus, and digital penetration constitute separate crimes" "with a separate animus," and thus, "they do not constitute allied offenses of similar import."  *Nicholas*, 66 Ohio St.3d at 435; *accord State v. Stites*, 2020-Ohio-4281, ¶ 87 (1st Dist.) ("Different sexual acts are considered separate offenses."); *State v. Townsend*, 2019-Ohio-1134, ¶ 70 (8th Dist.) ("rape involving different types of sexual activity, such as vaginal intercourse, digital

penetration, and oral intercourse, arise from distinct conduct and are not considered allied offenses, even when committed during the same sexual assault"); *State v. Prince*, 2021-Ohio-4475, ¶ 15 (3rd Dist.) (the defendant's "act of forcing the victim to perform fellatio on him followed by his act of forcing the victim to have intercourse (with him) demonstrates distinct and separate acts that occurred in a close proximity of time during an extended assault on the victim."); *State v. Miller,* 2017-Ohio-7986, ¶ 46 (6th Dist.) (noting "that it is well-established that instances of vaginal rape and anal rape may form the basis for two separate rape convictions"); *see State v. Jones*, 2010-Ohio-2243 (5th Dist.) (unlawful sexual conduct with a minor by digital penetration and cunnilingus were not allied offenses of similar import even when committed in a short time span); *see also State v. Peace*, 2018-Ohio-3742, ¶ 29 (11th Dist.) (kissing a bruise on a child's hip is a distinct act from inserting tongue in child's vagina); *State v. Brindley*, 2002-Ohio-2425, ¶ 11, 13 (10th Dist.) (holding that touching the victim's breast, "sucking" the victim's breast, and touching the victim's vaginal area supported three convictions for gross sexual imposition).

{¶91} Furthermore, separate instances of rape do not constitute allied offenses of similar import. *See State v. Koster*, 2024-Ohio-57, ¶ 31 (4th Dist.) (30 counts of unlawful sexual conduct with a minor were not allied offenses of similar import when testimony established, in part, that the defendant had engaged "in oral sex with [the victim] 'over a hundred' times," "vaginal sexual conduct" "'a hundred or more' times," and "anal sex 'twice'"); *State v. Waters*, 2003-Ohio-4624 (5th Dist.) (evidence that the defendant repeatedly engaged in vaginal intercourse, digital penetration, fellatio, and cunnilingus with three different victims over a three-year period established that the defendant committed separate acts of rape and unlawful sexual conduct with a minor).

{¶92} In the case sub judice, as we explained in our discussion of appellant's second assignment of error, the evidence adduced at trial supports a conclusion that appellant committed eight distinct acts of rape. Appellant's eight rape convictions, therefore, are not allied offenses of similar import that merge for purposes of sentencing. *See State v. Lykins*, 2019-Ohio-3316, ¶ 63 (4th Dist.) (evidence established that defendant committed three separate acts of rape, so the trial court did not err by failing to merge offenses).

Consequently, we do not believe that the trial court erred by convicting appellant of eight rape offenses rather than merging some or all of the offenses.

{¶93} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY


It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court


BY:_____
        Peter B. Abele, Judge




NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.